[Civ. No. 5298.   First Appellate District, Division One.—January 11, 1927.]

# W. A. C. YULE, Appellant, v. KATIE C. MILLER et al., Respondents.

[1] VENDOR AND VENDEE — CONTRACT FOR SALE OF REAL PROPERTY — PAYMENTS—CONSTRUCTION—DEFAULT.—Under a contract for the sale of real property which in part provided that the balance of the purchase price should be paid by the vendee in monthly installments of $35 or more per month, including interest at a specified rate on deferred balances, interest to be deducted from each payment to date and balance applied on principal, and that the vendee should make monthly payments within the first year of $500, the vendee was not required to pay at least $35 per month on account of principal, and there was no default on the part of the vendee where advance payments were made by her during the first year, aggregating more than $500, even though during certain months of said year no payments were made.

[2] ID.—PRINCIPAL AND INTEREST—APPLICATION OF PAYMENTS—CONDUCT OF PARTIES—CONSTRUCTION.—Under such contract, where but $35 was paid during each of certain months, and such payments were accepted and credited first on the interest and the balance remaining on the principal, it is obvious (applying the rule that if the meaning of the language of an instrument can be considered doubtful, the court will call in the aid of the acts done under it as a clue to the intention of the parties) that the parties to the contract understood that an amount equal to $35 a month on both principal and interest should be paid and as much more as the vendee desired or felt she was able to pay.

[3] ID. — ACTION FOR CANCELLATION OF CONTRACT — SEIZURE OF PROPERTY—RESCISSION—FINDINGS—EVIDENCE—APPEAL.—In this action by a vendor for a cancellation of a contract for the sale of real property, based upon an alleged default by the vendee, the evidence was sufficient to support the finding that the plaintiff by seizing the property rescinded the contract, and when there is evidence to support such finding the judgment should not be disturbed.

[4] ID. — INFERENCES — JUDGMENTS. — All intendments and conflicting rational inferences must be resolved in favor of the judgment of the trial court.

[5] ID.—RESCISSION—INCOMPETENT EVIDENCE ADMITTED WITHOUT OBJECTION—SUFFICIENCY OF.—Incompetent evidence admitted without

---

4.   See 2 Cal. Jur. 852; 2 R. C. L. 219.

objection is to be regarded as sufficient to establish the fact of
rescission, and evidence technically 'incompetent admitted without
objection must be given as much weight in the reviewing court in
reviewing the sufficiency of the evidence as if it were competent.

[6] ID.—INTEREST—TIME.—The general rule is that interest is allow-
able from the time the sum in suit becomes due, if the same is
certain or can be made certain by mere calculation.

[7] ID.—RESCISSION BY VENDOR—MONEY HAD AND RECEIVED—INTER-
EST ON PAYMENTS—TIME.—In an action to recover the purchase
money paid upon a contract for sale of real property, when the
contract is terminated by the fault of the vendor and by reason
of such fault the vendee is prevented from acquiring the prop-
erty under the contract, the action for the money paid is in the
nature of one for money had and received, namely, money paid
to the vendor for which, in view of the termination of the con-
tract, the vendee has received no consideration, and the vendee
is entitled to interest on his payments as from the time of making
payments instead of from the time when the vendor rescinded.

[8] ID. — JUDGMENTS — PLEADING — CROSS-COMPLAINT — AMEND-
MENTS.—In such action, where plaintiff's counsel called the at-
tention of defendant's counsel to the fact that the cross-complaint
alleged a lesser sum to be due than what the contract showed had
been paid thereon, and, after defendant's counsel declared that
that was an error in computation, stated, "Yes, that is evi-
dently an error," such statement was practically a correction
agreed to in open court, but if not, it fell within the rule that,
in the absence of any claim that plaintiff was misled by the
proof, the evidence thus introduced and the findings made thereon
are to be regarded as if defendant had amended her cross-com-
plaint so as to present the issue prior to entering upon the trial
or even prior to the introduction of any testimony.

[9] ID.—APPEAL—REVERSAL—CHARACTER OF ERROR.—No error should
suffice to reverse a judgment or order, if it appears that the ap-
pellant has not been and could not be injured thereby.

(1) 17 C. J., p. 508, n. 46, p. 513, n. 66; 39 Cyc., p. 1336, n. 41.
(2) 13 C. J., p. 546, n. 54; 39 Cyc., p. 1297, n. 77. (3) 4 C. J.,
p. 878, n. 81; 9 C. J., p. 1256, n. 27 New; 39 Cyc., p. 1388, n. 19.
(4) 4 C. J., p. 731, n. 81. (5) 4 C. J., p. 679, n. 42; 38 Cyc., p. 1394,
n. 43, p. 1395, n. 46. (6) 33 C. J., p. 230, n. 2; 39 Cyc., p. 2074,
n. 53. (7) 39 Cyc., p. 2045, n. 45. (8) 33 C. J., p. 1167, n. 18. (9)
4 C. J., p. 908, n. 63.

5.    See 2 Cal. Jur. 804.
6.    See 14 Cal. Jur. 678.
7.    See 25 Cal. Jur. 794.
9.    See 2 Cal. Jur. 1004; 2 R. C. L. 230.

APPEAL from a judgment of the Superior Court of San Diego County. C. N. Andrews, Judge. Affirmed.

The facts are stated in the opinion of the court.

Clifford C. Pease for Appellant.

Jos. H. Egermayer and N. S. Hammack for Respondents.

CAMPBELL, J., *pro tem.*—This appeal is from that portion of the judgment only which awards to respondents judgment on their cross-complaint, in the amount of $976.23, together with interest and costs, and not from the judgment entered in favor of appellant quieting title to certain lands and canceling certain instruments of conveyance.

On the fifteenth day of June, 1921, respondent Katie C. Miller entered into a written contract with appellant, W. A. C. Yule, for the purchase and sale of lots 2 and 11 in block 121 of Middletown, being 50 by 200 feet, number 3153, India Street, San Diego, California.

Respondent took possession of the property, furnished it, and up to the time of the acts of rescission set forth in the counterclaim and cross-complaint filed herein retained possession thereof. Until about June 24, 1922, the premises were occupied by a tenant of respondent. On June 24, 1922, the house upon the lots was nailed up by a carpenter employed by appellant, who refused to stop nailing it up when requested to do so by Richard L. Miller, husband of respondent. There was a sign posted on the property at the time upon which was printed "Keep out. Trespassers will be prosecuted. Owner W. A. C. Yule." Thereafter respondents' furniture was moved from the premises. On July 10, 1922, appellant wrote to respondents, notifying them that their furniture was placed in a storehouse for safekeeping until claimed by them and that appellant's letter would be an order to the transfer company to let respondents have their furniture.

The purchase price agreed upon in the agreement of sale for the property in question was $2,950. On June 15, 1921, the date of the agreement, $375 was paid, and within one year, or by May 27, 1922, further payments in the sum of $520 were made.

The agreement executed by W. A. C. Yule and Josephine K. Yule, his wife, as parties of the first part and Katie C. Miller, as party of the second part, provides that the first parties agree to sell and the second party agrees to buy the property in question for $2,950—$375 cash, receipt whereof is acknowledged, and the balance in monthly installments as follows: $35 or more per month, including interest at the rate of seven per cent per annum on deferred balances, interest to be deducted from each payment to date and balance applied on principal beginning July 15, 1921. The agreement further provides that the buyer shall make monthly payments within the first year of $500 and in each year thereafter until the balance due is reduced to $1,500, which shall be made into first mortgage for three years, with interest at seven per cent, and deed shall then be delivered to the buyer.

Appellant, who was the plaintiff in the action, on June 26, 1922, brought suit praying judgment that by reason of the default of respondents in making payments in accordance with the terms of the agreement, the same be declared canceled and ordered delivered up. The answer denies the alleged default in payments and by way of cross-complaint demands judgment for $1,192.33 as damages for sums alleged to have been paid out for improvements, taxes, street bond assessments, etc. The trial court, after allowing $300 as the rental value of the property, entered judgment in favor of respondents upon the cross-complaint for payments, taxes, assessments, repairs, interest, and costs in the sum of $976.23; canceled the agreement and entered a decree in favor of appellant quieting his title to the premises against respondents, subject only to a lien against such property in favor of respondents for the amount of the judgment.

Appellant in the bill of exceptions urges five specifications wherein the trial court erred: Exception No. 1. "Error of the Court in construing the contract of sale in question as to when payments required to be made, and in failing to find that the defendants were in default in the performance of said contract prior to the time of any question of retaking possession." Exception No. 2. "Error of the Court in finding that said defendants were not in default upon said contract and that said defendants had thereby first

rescinded said contract.'' Exception No. 3. ''Error of the Court in finding that the plaintiff had rescinded said contract by seizing possession of said premises, there being no sufficiently competent evidence on which to base said finding.'' Exception No. 4. ''Error of the Court in finding and allowing interest from the time of the making of payments by said defendants instead of from the time when, by the cross-complaint, plaintiff is alleged to have rescinded said contract.'' Exception No. 5. ''Error of the Court in finding and allowing the sum of $895.00 as having been paid by defendants to plaintiff, whereas defendants' cross-complaint alleges and claims such sum to be in amount of $885.00.''

Respondents paid on the agreement $375 on June 15, 1921, when it was executed, and thereafter made the following payments: July 9, 1921, $15.03 interest and $19.97 on principal; July 13, 1921, $200 on principal; August 20, 1921, $50 on principal; September 6, 1921, $27.18 interest and $7.82 on principal; October 4, 1921, $13.41 interest and $21.59 on principal; November 16, 1921, $13.20 interest and $21.80 on principal; January 5, 1922, $13 interest and $57 on principal; May 6, 1922, $40 on principal; May 27, 1922, $12.82 interest and $7.18 on principal —making a total of $520 paid on the agreement before the expiration of the first year in addition to the $375 paid on the date of its execution, during which period $35 or more was required to be paid monthly, including interest, and which total payments for such period should aggregate $500.

[1] While it is true that respondents made no payment during the month of December, 1921, nor during February, March or April, 1922, in none of these months were respondents in arrears in the amounts due nor in default, unless under the contract $35 or more was required to be paid each month, even though advance payments had been made covering the amounts due monthly. Appellant, however, contends that the clause in the contract, ''thirty-five dollars or more per month, including interest at the rate of seven per cent per annum, payable on deferred balances, interest to be deducted from each payment to date and balance applied on principal . . . the buyer shall make monthly payments within the first year of $500.00,'' really

meant to provide, as shown by the manner of the first several payments, that there should be during the year enough more than $35 per month paid to amount to $500 on principal; that they omitted to use the words "on principal," but that the words "on principal" are necessarily implied. The interpretation of this clause of the contract presents the main question on appeal and is determinative of the objections raised in "Exception No. 1" and "Exception No. 2."

The trial court found: "That the sum of $375.00, the first payment under the terms of the contract, and the sum of $520.00, making a total sum of $895.00, was paid during the first year, and during the life of said contract, in compliance with, and in accordance with the terms of said contract and agreement of sale, which amount was credited on said contract; that there was no default in the payment of the sum and sums so due and payable as provided and stipulated in the said contract at any time during the first year and when said contract was in full force and effect; that there was no default in any manner or form under the terms of the contract at the time of the commencement of the action." In other words, the court held—and we think correctly so—that the contract is not ambiguous nor uncertain. The contract as concluded is a complete, workable, and unambiguous instrument and therefore does not require the addition of any terms to enable it to be carried out according to the express declaration of the parties, and therefore does not require either evidence of usage or implication of law to interpret it or carry it into effect (*Gero* v. *Rickey*, 38 Cal. App. 27 [175 Pac. 91]).

It would require a strained construction and a violation of the express terms of the contract to hold that more than $35 per month was required to be paid to cover both the principal and interest, and that when advance payments had been made sufficient to cover the payments due on subsequent months that payments were required to be paid during these months covered by such advance payments. A simple addition of the amounts paid shows that respondents were not in default on the date the suit was brought.

[2] If, however, it could be said that there exists any ambiguity as to whether or not the monthly payments of

not less than $35 per month provided in the contract were intended to be a payment on the principal and that an additional payment should be made to cover the interest, or that the $35 payment should be applied in payment of both principal and interest, the construction placed upon this clause of the contract by the parties themselves removes any question of doubt. Payments made and credited on the contract range from $20 to $200. In the months of July, September, October, and November, 1921, but $35 was paid during each of these months, and these payments were accepted and credited first on the interest and the balance remaining on the principal. It is therefore clear that the parties to the contract understood and intended exactly what they stated in the contract—"thirty-five ($35.00) dollars or more per month, including interest at the rate of seven per cent per annum, payable on deferred balances, interest to be deducted from each payment to date and balance applied on principal." As was said by this court in *Retsloff, as Trustee,* v. *Smith,* 51 Cal. App. 145, 249 Pac. 889, "if the meaning of the language of an instrument can be considered doubtful, the Court will call in the aid of the acts done under it as a clue to the intention of the parties (citing cases)." When this rule is applied in the instant case it is obvious that the parties to the agreement understood the clause under consideration to mean that an amount equal to $35 a month on both principal and interest should be paid and as much more as the purchaser desired or felt she was able to pay.

[3] As to appellant's exception No. 3, that there is no sufficient competent evidence on which to base a finding that the plaintiff by seizing the property rescinded the contract, it may be said that there is evidence to support the finding of the trial court, and that when there is evidence to support such finding the judgment should not be disturbed (*Leal* v. *Martin,* 59 Cal. App. 760 [211 Pac. 853]). [4] All intendments and conflicting rational inferences must be resolved in favor of the judgment of the trial court (*Reseter* v. *Leonardi,* 61 Cal. App. 768 [216 Pac. 71]).

The witness Richard L. Miller, the husband of Katie C. Miller, and also a defendant in the action, testified relative to the facts occurring at the time the house was nailed up. He said he went there and had to pull a board off to get

in; that he wanted to see how their furniture was and what had happened to it; that there was a sign on the property at the time which said: "Trespassers keep out would be prosecuted by W. A. C. Yule"; that he tried to stop the carpenter from nailing it up—the carpenter refused to stop and said he had orders from the man next door; that while there he took a photograph of the premises. The photograph was taken on June 24, 1922. On the day the furniture was moved from 3153 India Street he got there just after they had the furniture loaded. It was moved by the Pioneer Transfer Company. The witness further testified that he asked the man whose authority he had to move the furniture; that the driver had a small card with W. A. C. Yule written on it. This testimony, admitted without objection, coupled with the fact that appellant wrote a letter to respondents notifying them that their furniture had been delivered by the Pacific Transfer Van & Truck Co. to their warehouse for safekeeping and that the letter, which was signed by appellant, would be an order for the furniture, together with the fact that on June 26, 1922, two days after the house was nailed up by the carpenter, who said he had his orders from the man next door, appellant filed his suit praying for a cancellation of the contract, and that the letter with respect to the furniture was written from 3167 India Street—Mr. Yule's home adjoining 3153 India Street—is ample evidence to support the finding complained of. [5] While some evidence was received that might have been subject to an objection, no objection was made, and it is well settled that incompetent evidence admitted without objection is to be regarded as sufficient to establish the fact (*Mercantile Trust Co.* v. *Sunset etc. Co.*, 176 Cal. 466 [168 Pac. 1037]). Evidence technically incompetent admitted without objection must be given as much weight in the reviewing court in reviewing the sufficiency of the evidence as if it were competent (*Parsons* v. *Easton*, 184 Cal. 769 [195 Pac. 419]; *Janson* v. *Brooks*, 29 Cal. 223; *Curiac* v. *Packard*, 29 Cal. 197; *McCloud* v. *O'Neall*, 16 Cal. 397; *Williams* v. *Hawley*, 144 Cal. 102 [77 Pac. 762]).

Appellant's exception to the court's finding that respondents are entitled to interest from the time of making payments instead of from the time when appellant is alleged

to have rescinded the contract is not well taken.  [6]  The general rule is that interest is allowable from the time the sum in suit becomes due, if the same is certain or can be made certain by mere calculation (*Gray* v. *Bekins,* 186 Cal. 399 [199 Pac. 767]; *Hind* v. *Uchida Trading Co.,* 55 Cal. App. 263 [203 Pac. 1028]).  [7]  In an action to recover the purchase money paid upon a contract for sale of real property, when the contract is terminated by the fault of the vendor and by reason of such fault the vendee is prevented from acquiring the property under the contract, the action for the money paid is in the nature of one for money had and received, namely, money paid to the vendor for which, in view of the termination of the contract, the vendee has received no consideration (*Lemle* v. *Barry,* 181 Cal. 1 [183 Pac. 150]).

[8]  Appellant contends in his exception No. 5 that the court erred in entering judgment in favor of respondents for $895, when in the cross-complaint they only allege and claim $885.

During the progress of the trial Mr. Pease, attorney for appellant, called the attention of Mr. Egermayer, attorney for respondents, to a discrepancy between the allegations and the proof as follows:

"Mr. Pease: There is a discrepancy in the amount alleged in the cross-complaint of defendants and the amount as shown to have been paid and endorsed on the contract.

"Mr. Egermayer: That was an error in computation. The amount shown by the cross-complaint is that $885.00 had been paid, while the contract, which is a part of the cross-complaint, shows that there was paid and endorsed thereon $895.00.

"Mr. Pease: Yes, that is evidently an error."

The statement of counsel, "Yes, that is evidently an error," is practically a correction agreed to in open court, but, if not, it falls within the rule laid down in *Firebaugh* v. *Fairbank,* 121 Cal. 193 [53 Pac. 562], in which the court says: "The defendants have the right to present by their answer any matter which would constitute a defense to the cause of action set forth in the complaint, and the court was authorized to permit them to plead such matter by amending their answer even after the trial was commenced. If, without such amendment, evidence was received at the

trial which did not constitute a material variance, the court should either find the fact in accordance with the evidence, or it should direct the pleading to be amended to conform thereto (Sec. 470, Code Civ. Proc.). When the evidence was offered the plaintiff did not claim that he was misled by its introduction or was in any way prevented from maintaining his cause of action upon the merits. . . . The evidence thus introduced and the findings made thereon are, therefore, to be regarded as if the defendants had amended their answer so as to present these issues prior to entering upon the trial or even prior to the introduction of any testimony.''

[9] ''No error should suffice to reverse a judgment or order, if it appears that the appellant has not been and could not be injured thereby.'' (*Peters* v. *Peters,* 156 Cal. 37 [23 L. R. A. (N. S.) 699, 103 Pac. 221].)

This disposes of the errors assigned by appellant in his bill of exceptions, and from what has been said it follows that there is no merit in the appeal.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.