[S. F. No. 12430. In Bank.—January 30, 1930.]

JESSIE HAIGHT, as Administratrix, etc., Respondent, v. MARIN MUNICIPAL WATER DISTRICT (a Public Corporation), Appellant.

754

George H. Harlan for Appellant.

William Kehoe for Respondent.

PRESTON, J.—The judgment for plaintiff in the sum of $10,500 is hereby affirmed. Plaintiff Charles O. Wellock, having died during pendency of the action and his administratrix having been substituted in his stead, the use of the word "plaintiff" herein will refer to said Charles O. Wellock, deceased. The defendant has appealed.

The action is one to recover damages for the alleged breach by defendant of a contract to sell and convey to plaintiff a tract of land of 459 acres lying near Fairfax, Marin County, California. On April 3, 1925, defendant, upon payment to it by plaintiff of the sum of $500, executed to him a fifteen-day option to purchase said land for the price of $50,000. On the next day, April 4th, the option was confirmed, but amended to a certain extent by a letter from defendant providing the terms of payment of the purchase price. On or about the same day a proposed draft of the contract of sale and purchase was drawn up by the attorney for defendant and delivered to plaintiff optionee. Evidently it was the belief of defendant that plaintiff would either subdivide said property and sell same himself or would sell the property outright to another, who would subdivide.

On or about April 14th the board of directors of defendant District learned that it was the purpose of plaintiff to resell the lands in question to certain purchasers for the price of $60,000, whereupon a special meeting of the board of defendant was called on April 15th to consider the revocation of said option. Ten of the members of the board attended the meeting and it was pointed out to them that the optionee would enjoy a profit of $10,000 and would have a possible claim for a five per cent commission in addition thereto upon sale of the property. A resolution to cancel and revoke the option was then introduced, but failed of passage by a vote of five to five, at least eight votes being required for affirmative action. On this day the optionee expressly waived any commission which might accrue to him and stood upon his rights under the option, claiming that he was dealing in his own right as principal.

Theretofore, and on April 6, 1925, plaintiff had sought and found purchasers who had given a check for $22,500 and delivered same in escrow to be finally delivered upon assignment to them of said contract of sale signed by defendant District, they having approved the said form of contract submitted to them by plaintiff.

With matters in this condition the optionee, on April 18th, gave notice in writing to the District of his acceptance of the offer contained in the previous letters of April 3d and 4th. The board again met on April 21st, at which time it reconsidered the whole subject matter, including the acceptance of the offer that had been made subsequent to its last meeting. Plaintiff and his attorney attended this meeting as did also the purchasers and their attorney. The meeting was thrown open to all present and, after a general discussion by the parties and their attorneys, the board adopted a resolution by an eight to five vote, expressly confirming said option and directing the executive committee to take up the matter of the agreement of sale between plaintiff and said purchasers and report at the next meeting three weeks later. Plaintiff and said purchasers, all being present, protested against adjournment without authorizing the execution of the said contract of sale. The board, however, adjourned for three weeks. On April 23d the purchasers withdrew their check from escrow. This action followed.

The complaint sets up in detail the successive steps had between the giving of the option on April 3d and the final adjournment of the board on April 21st and charges in a rather inapt but, we think, effective manner, that the market value of the property was at the date of breach $60,000. It also charges facts sufficient to bring it within the purview of that portion of section 3306 of the Civil Code, which reads as follows: " . . . But adding thereto, in case of bad faith, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed, at the time of the breach, and the expenses properly incurred in preparing to enter upon the land." This is true because the facts detailed in the complaint show that the breach of the contract by defendant was wilful and done in the light of all the facts; hence warranting the conclusion

that it was done in bad faith. (*Johnson* v. *Schimpf,* 197 Cal. 43, 48 [239 Pac. 401].)

The court found that all the allegations of plaintiff's complaint were true. This implies that the court found the market value of the property to have been $60,000 at the date of the breach and that the breach was committed in bad faith. The evidence supports these findings as appears from the above recital of what are really undisputed facts.

This conclusion, either directly or impliedly, disposes of all the defenses urged by appellant, only a few of which need be specially noticed. First is the claim that at the inception of the negotiations plaintiff was the agent of defendant and was acting in a fiduciary relationship to it; hence he could not accept a secret profit. If this was true at that time, the contention is, nevertheless, of no avail against the two corporate acts, by resolution of the board, sustaining the option in the face of full knowledge on its part of all the claims of plaintiff. The further contention that defendant was without power to execute the option in the first instance is also disposed of by said two corporate acts.

The claim that plaintiff was without ability or willingness to perform was waived by the deliberate failure of defendant to carry out the agreement on its part when concededly plaintiff was not in any respect in default. The further contention that plaintiff failed to show damage is answered first by the item of $500 paid out by him for the option, and second, by our conclusion above announced that the complaint plead bad faith on the part of defendant and also the market value of $60,000 of the property at the time of breach, and that the implied finding to this effect is supported by the evidence. Indeed, in defendant's specifications of error there is no contention that the evidence was insufficient to prove this value for the property on the date of breach.

The excess of the market value over the option price and the item of $500 comprise the amount given plaintiff by the judgment. Under our construction of the complaint and the issues, the so-called rule of consequential damages, commonly called the Baxendale rule (*Hadley* v. *Baxendale,* 9 Exch. 341), applied in *Hunt Bros.* v. *San Lorenzo Water*

*Co.*, 150 Cal. 51 [7 L. R. A. (N. S.) 913, 87 Pac. 1093], and other cases is not involved.

Further discussion is unnecessary.

Richards, J., Seawell, J., and Curtis, J., concurred.

. SHENK, J.; Dissenting.—I dissent. The majority opinion affirms a judgment for $10,500 against the defendant District based on the "bad faith" provisions of section 3306 of the Civil Code without sufficient proof of bad faith, and in the absence of a finding on the allegations of the answer charging the plaintiff with fraud and duplicity in his transactions, a finding which, if made, would necessarily have to be in favor of the defendant. When the word "plaintiff" is used herein it will refer to Charles O. Wellock, the original plaintiff.

During all of the times mentioned herein the defendant was and is a public corporation organized and existing under a statute (Stats. 1911, p. 1290, as amended), and was the owner of a tract of land near Deer Park, Marin County, consisting of 459 acres, and which it was willing to sell. The plaintiff was a duly licensed real estate salesman connected with the Bishop-Carlson Company, duly licensed real estate brokers.

In the latter part of 1924 the plaintiff went to John A. Burt, general manager of the defendant District, stated to him that he thought he had a customer for the Deer Park lands, and requested that the lowest cash figure for the same be quoted to him. The matter was placed before the board of directors of the District, which, on January 20, 1925, adopted resolution number 781 wherein it was "resolved that the board of directors of the Marin Municipal Water District will not consider any offer for said real property for a price less than $50,000; and be it further resolved concerning the granting of options for the sale of said property at said figure that, if deemed advisable by the general manager an option or options may be given which in no event shall exceed a duration of sixty (60) days, the consideration for such option or options to be $500 for a 15-day option, $1,000 for a 30-day option, or $2,000 for a 60-day option, the payment on such option to be ap-

lied to the purchase price in case the sale is consummated, otherwise to be forfeited.''

On April 3, 1925, the plaintiff paid to the District the sum of $500 and received a document, signed only by the general manager, purporting to grant to the plaintiff by name an option to purchase said lands for $50,000 cash. On the day following, to wit, on April 4, 1925, the general manager at the request of the plaintiff wrote a letter to the plaintiff in care of Mr. John A. Prentice, commencing as follows: ''Further confirming the option granted to you dated April 3d from the Marin Municipal Water District relating to 459 acres at Deer Park, I beg leave to state that the Marin Municipal Water District will grant the following terms of sale: Twenty-five per cent of the purchase price to be paid by you upon delivery of an agreement of sale; the balance of the purchase price to be payable in three equal installments, one, two and three years after date. . . . '' Then follow provisions appropriate to a contract for the purchase of lands to be placed on subdivision. Below the signature of the general manager a majority of the members of the board of directors appended their signatures to a statement that they affirmed the understanding set forth in the letter and that they ''consent to the recommendation of its adoption by the board of directors.'' On April 7, 1925, the purported option of April 3d and the above letter of April 4th were assigned by the plaintiff to John H. Rice and J. J. Greisen, subdividers of land, who placed in escrow such assignments together with a check for $22,500, payable to the plaintiff and indorsed by him, with an abstract company in San Rafael, with instructions to surrender said check for $22,500 to the plaintiff when the escrow should be completed. Upon failure to complete the escrow within ten days the check was to be returned to Rice and Greisen. The defendant in no sense became a party to the escrow matter. On the order of the plaintiff $10,000 of the $22,500 was to be paid to John A. Prentice on behalf of both the latter and the plaintiff and the balance of $12,500 was to complete the cash payment on the installment contract of purchase and sale which the general manager purported to authorize by his letter of April 4th. The defendant contended at the trial and now urges that at all times prior to April 7th the plaintiff was acting as

the agent of the District and that it was not until April 7th when the check for $22,500 was placed in escrow that the District, through its general manager, discovered that the plaintiff expected to make a profit of $10,000 on the deal. When this fact was discovered the attorney for the District was notified thereof. A special meeting of the board of directors was called and held on April 15th, at which meeting the attorney for the District presented the situation to the board and recommended that the option made in the name of the plaintiff be canceled on the ground of the fraud and duplicity of the plaintiff in so maneuvering the transaction as to claim a profit of $10,000 when in truth he was at all times acting as the agent of the District and entitled to a commission only. Rice and Greisen were also represented at that meeting. After hearing the matter a resolution to cancel said option was lost by a tie vote of five to five. An adjournment was then taken to April 21st. On April 18, 1925, the plaintiff addressed a communication to the defendant as follows: ''I hereby accept the offer contained in your option to me for the purchase of the hereinafter mentioned property dated April 3, 1925, as modified by your letter dated April 4, 1925, further confirming said option and modifying and extending terms relative to payment.'' The communication concludes with a description of the property. On April 21st the board met and further considered the matter of the sale of said property. At the meeting the plaintiff and Rice and Greisen were represented by their respective attorneys. After discussion a resolution was adopted reciting that the option of April 3d and the amplifying letter of April 4th had been signed by the general manager and resolving that the same be confirmed. At the same meeting a committee was appointed and ''directed to take up the matter of the agreement to be executed between the Water District and purchaser of the Deer Park property and report back at the next meeting of the board.'' The plaintiff and the proposed purchasers objected to the continuance of the matter, insisting that the contract of purchase and sale in accordance with the terms of the documents of April 3d and 4th, which had not theretofore been approved by the board, be executed before the next meeting of the board. One of the main reasons for the continuance of the matter was that it appeared that street

work was to be done by the proposed subdividers and it was deemed necessary to have the proposed contract so framed that an adequate bond be provided for to protect the District against mechanics' liens. The proposed purchasers refused to pay their money or any thereof in reliance upon the assignments to them from the plaintiff on advice of their attorney that such a transaction would be set aside by a taxpayer because of the relationship of principal and agent between the plaintiff and the District and insisted on a contract direct from the District. The proposed purchasers refused to wait longer and withdrew their money from escrow on April 23d and this action was commenced on April 29th.

The foregoing facts appear without conflict in the evidence. They do not constitute a statement of all of the facts, but are full and sufficient for the purpose of considering one of the major contentions of the District. The facts relating to the further major contention that the plaintiff was the agent of the District in his activities with reference to the sale of said land will later be elaborated upon.

It is the contention of the District that no contract binding on the District resulted from the signing of the documents of April 3d and 4th by the general manager of the District and the purported exercise of said options by the plaintiff. It may be conceded that if said documents of April 3d and 4th were the act of the District and binding in all respects upon it the exercise of the option by the plaintiff on April 18th resulted in a contract sufficient in its details to constitute an agreement of purchase and sale, provided the same was not void or unenforceable by reason of the fiduciary relation of the plaintiff to the District, however inadequate the terms thereof might be as protecting the rights of the District.

It must be remembered that we are herein dealing with a public corporation whose directors are trustees of the taxpayers and inhabitants of the District and we must measure the acts of the District with the yardstick of the statute of its creation. As stated, the District was organized under the statute of 1911 after an election duly held for that purpose. After providing the elaborate plan for the election and canvass of the vote, the act provides in section 8 that "the board of directors shall be the governing body of such

municipal water district." Section 9 provides that "The board of directors shall act only by ordinance or resolution." Section 12, enumerating the powers of the District, provides, among other things, that the District shall have the power "to make contracts." Section 14 (Stats. Ex. Sess. 1911, p. 103) provides: "The president shall sign all contracts on behalf of the district. . . . The secretary shall countersign all contracts on behalf of the district. . . . The general manager shall have full charge and control of the maintenance, operation and construction of the water works and water-works system of said water district, with full power and authority to employ and discharge all employees and assistants at pleasure, prescribe their duties and shall, subject to the approval of the board of directors, fix their compensation. The general manager shall perform such other duties as may be imposed on him by the Board of Directors."

From the foregoing it is seen that the statute prescribes the method for the execution of contracts authorized by the board of directors by imposing the duty to sign and countersign the same on the president and secretary. It is elementary in the law applying to public corporations that when the method of contracting is prescribed by statute such method is the measure of the power to contract. (*Zottman* v. *San Francisco*, 20 Cal. 97 [81 Am. Dec. 96]; *Los Angeles Gas Co.* v. *Toberman*, 61 Cal. 199; *Frick* v. *Los Angeles*, 115 Cal. 512 [47 Pac. 250]; *Foxen* v. *City of Santa Barbara*, 166 Cal. 77 [134 Pac. 1142]; 18 Cal. Jur., p. 1002.) If the president and secretary should refuse to execute a contract authorized by the board they could be compelled to do so as a duty especially enjoined by law. (Sec. 1085, Code Civ. Proc.) Since the law especially enjoined that duty on the president and secretary it was not competent for the board of directors to transfer that duty to any other officer or person. (*Meuser* v. *Risdon*, 36 Cal. 239.) If the statute had not prescribed who should sign contracts on behalf of the District the situation would have been vastly different. (See *Hayes* v. *Handley*, 182 Cal. 273 [187 Pac. 952].) Nowhere in the statute is it made the duty of the general manager to sign contracts on behalf of the District. His powers and duties are laid down in the law. He has nothing to do respecting the sale of lands of the

District and the terms of the statute requiring him to perform such other duties as may be imposed on him by the board of directors could by no means be stretched to authorize the board of directors to transfer to him the duty specifically reposed by law in the president and secretary. It may not be disputed that when an option to purchase land, lawful and complete as to its terms, is accepted by the optionee, a binding contract results. But since the board of directors in the present case had no authority to transfer the duties of the president and secretary to the general manager the purported contract arising out of the documents signed by the general manager on April 3d and 4th, and the purported acceptance thereof, was not a contract binding on the defendant District. It is settled law that language purporting to define the powers of a public corporation is strictly construed against the existence of the power. (*Ex parte Daniels,* 183 Cal. 636 [21 A. L. R. 1172, 192 Pac. 442]; 18 Cal. Jur., p. 801, and cases cited.)

Assuming, however, that it was within the power of the board of directors to transfer the statutory duties of the president and secretary to the general manager in the matter of the execution of such an important contract, the record satisfactorily shows, first, that such power was not delegated with such definiteness as to bind the District, and, secondly, that if granted, the power assumed to be exercised by the general manager was not within the scope of the delegated power.

The authority of the general manager to sign the contract is based solely on the terms of resolution No. 781, adopted by the board on January 20, 1925, and on the language italicized in the following paragraph of the resolution: "Be it further resolved *concerning the granting of options for the sale of said property at said figure that, if deemed advisable by the general manager, an option or options may be given* which in no event shall exceed a duration. . . . " It is apparent that the language so emphasized does not assume to grant, except by the merest inference and conjecture, authority to the general manager to sign a contract on behalf of the District. It amounts to no more than authority to the proper officers of the District, to wit, the president and secretary, to sign the contract in case the general manager should recommend the

same. It is quite natural that such an arrangement should be made for the reason that the general manager is more accessible to those interested in buying the land, and would be in a better position to talk with them and in the event an attractive offer were made to communicate it to those authorized to sign the contract. In any event, the language of the resolution itself is not reasonably susceptible of a construction that it is a grant of any power. But assuming further that said resolution definitely authorized the general manager to sign the option such authority would necessarily be measured by the terms of the resolution which specified $50,000 as the minimum price and as no authority to sell the land on time for subdivision purposes had been given, the language of the resolution plainly means that any option signed thereunder must be for cash. Instead of confining the option to a cash sale as so plainly contemplated by any authority granted him, the general manager assumed by his supplemental letter of April 4th to grant an option for payment of one-fourth cash and the balance in yearly installments and to prescribe the details as to how the land should be handled on subdivision and with conditions and reservations attached which were not approved by resolution of the board of directors or otherwise according to law. Neither the plaintiff nor his assignees Rice and Greisen purported to accept the terms of the option of April 3d, but always and at all times conditioned their acceptance of the offer upon the terms of the unauthorized letter of April 4th. Especially was this true with reference to the plaintiff's action on April 18, 1925, when he purported to accept the offer to sell the property "dated April 3rd, 1925, as modified by your letter dated April 4th, 1925, further confirming said option and modifying and extending terms relative to payment," which acceptance of an unauthorized option forms the basis of the plaintiff's cause of action.

Want of power is always a defense available to a public corporation and no act of ratification can breathe life into the lack of power. If the rule were otherwise the public body could by ratifying a void act, extend its powers without limit. The unvarying rule is that the act of a public body may be subsequently ratified only in case it could

theretofore have been authorized. A void act cannot be the subject of ratification or estoppel. (*Wickman* v. *City of Placerville*, 147 Cal. 162 [81 Pac. 537]; 18 Cal. Jur. 799.) Therefore, when the board on April 21st purported to ratify the void acts of the general manager of April 3 and 4, 1925, the effect of the ratification was a nullity and could not form the basis of any right of action.

. The next major contention of the defendant is that the plaintiff was acting as the agent of the District at all times in said transactions and as such is foreclosed from making a profit from the sale as against the interest of his principal. The evidence on this point is free from contradiction and is substantially as follows: On June 17, 1924, the board of directors adopted resolution No. 757, reciting that one or more real estate agents had applied for the privilege of attempting to secure a purchaser for the lands which the District desired to sell and to receive a commission for so procuring a purchaser. It was therefore resolved that the District ''does hereby authorize the payment of a commission of five per cent of the selling price of any of its lands offered for sale hereafter and sold through the efforts of any *bona fide* licensed real estate broker or agent; and that such payment be made . . . only upon final confirmation of such sale by the board of directors and not otherwise.'' The District reserved the right to reject the bids of such real estate agents or any purchaser introduced by them. In the latter part of 1924 the plaintiff called on the general manager and stated that he thought he was in touch with some people who would be interested in the Deer Park lands. On January 19, 1925, the plaintiff wrote to the board of directors of the District as follows:

. '' . . . I have been with interested parties over the tract of 459 acres adjoining Deer Park. I have reason to believe that my people are deeply interested in this tract and that there is a good chance for a sale. I will ask that the Board submit to me in writing the lowest cash price for this tract. I ask that a reasonable time be given me for a general survey and the completion of detailed negotiations. . . . This sale will be handled through an accredited real estate firm and if completed I will expect the commission established by resolution of the board of directors. Assuring the gentle-

men of the board that I have a genuine prospect for a sale and asking cooperation, I am,

"Sincerely and Cordially,
"(Signed) C. O. WELLOCK."

In response to the foregoing letter the board of directors on the following day, January 20th, adopted resolution No. 781, naming $50,000 as the lowest cash price for the lands in question. On January 22d the general manager mailed to the plaintiff a copy of resolution No. 781 and stated in an accompanying letter that it was adopted pursuant to plaintiff's letter of January 19th. In February, 1925, the plaintiff was introduced to John H. Rice and J. J. Greisen by Harold A. Willard. The plaintiff then proceeded to interest Rice and Greisen in the purchase of said lands for subdivision purposes. They would not pay cash, but would agree to pay $60,000, one-fourth down and the balance on terms provided suitable arrangements could be made for release of individual lots and the customary provisions be incorporated in a contract of purchase and sale. On March 27, 1925, the plaintiff signed a memorandum wherein he agreed to divide the "commissions and profits" from the sale of said lands equally with Harold A. Willard. On April 3d the plaintiff obtained from the general manager the so-called option of that date. On the same day, and in order to be secure in the payment of his commission, the plaintiff exacted and received from the general manager a letter addressed to the plaintiff and signed in the name of the District, by John Burt, general manager, as follows: "In connection with your proposed sale of our property, be informed that the board of directors of the Marin Municipal Water District by resolution number 757 have provided that in the event of sale a commission of five per cent shall be payable to the party negotiating the sale and in the event that sale is consummated through you a commission upon the full purchase price in the percentage of five per cent will be paid to you." The defendant offered to prove that the so-called option of April 3d and the foregoing letter of April 3d were a part of the same transaction and that the plaintiff stated at the time that he was negotiating with other parties as purchasers, but did not want to disclose their names and therefore desired to take the option in his own name. The plaintiff was charged with fraud in the

answer of the defendant in that he was claiming profits from the transaction when in fact he was acting as agent of the District. The court erroneously sustained the objection of the plaintiff's counsel to the offer of proof, but the record otherwise shows beyond cavil that the evidence was sufficient to prove the fact of such agency. As further proof it was in evidence that at the request of the plaintiff the attorney for the defendant prepared a tentative draft of an agreement for use in negotiating with the purchasers headed: "This agreement, made and entered into this —— day of April, 1925, by and between the Marin Municipal Water District, a public corporation, the party of the first part, and ——, the parties of the second part. . . . " When this agreement was prepared and handed to the plaintiff he refused to disclose the names of the purchasers as "the parties of the second part."

As further evidence of the plaintiff's relation of agent for the District and his claim for commission, on April 10, 1925, he signed the following document: "Whereas I have secured a purchaser for a tract of land of 459 acres of the Marin Municipal Water District at Deer Park on which I will have a commission of $2500 when the sale is consummated; and Whereas I have made a transfer of my right to one-half of said sum to Bishop-Carlson Co. and have still coming to me the other half thereof, or $1250. Now, therefore, and for a valuable consideration, I hereby assign and set over to Fairfax Bank my claim and interest in and to said one-half of said commission, being the sum of $1250, and direct payment to be made of said sum to Fairfax Bank, and the receipt of said Fairfax Bank shall operate as a discharge to my claim to said sum." At the request of the plaintiff the general manager signed the following, which was appended to the foregoing assignment: "The original of the above assignment, having been this day filed by the said Charles O. Wellock, is hereby accepted as an assignment *pro tanto,* of said commission when the same becomes due, but if the same never becomes due, no obligation to pay is hereby recognized."

On April 7th, the plaintiff assigned to John A. Prentice his interest in said purported contract and in and to the plaintiff's commission in the following language: "I hereby assign to and appoint with like powers set out above, the said John A. Prentice to divide and distribute and take re-

ceipts for the commission on said sale due from the Marin Municipal Water District in the amount of five (5%) per cent of the total purchase price of fifty thousand ($50,000.00) dollars, to-wit: $2250.00, in connection with all claims, commissions and interests legally due for assistance in connection with said sale.'' The evidence is overwhelming and without conflict that the plaintiff was acting as the agent of the District at all times prior to and on April 18, 1925. It was not until the check for $22,500 was placed in escrow by Rice and Greisen with the title company in San Rafael on April 7, 1925, that anyone connected with the District was apprised of the fact that the plaintiff was claiming a profit of $10,000 in the transaction as well as a commission. When the plaintiff was confronted with the fact that he was so claiming, it was stated by John A. Prentice, who had been authorized in writing to act in all respects in connection with the profits and the commission: ''Well, we will withdraw the commission and we are going to hold it for the profit.'' The discovery of the plaintiff's duplicity provoked the controversy that ensued when the attorney recommended that the so-called option of April 3d be canceled. It is too plain for argument that the plaintiff has no standing in this case either in law or in equity. When the fiduciary relation was established between the plaintiff and the District, as it was in this case, the law stepped in and foreclosed the plaintiff from claiming any secret profit. The proposition is conclusively settled, and there are no exceptions to the rule, that an agent is charged in full measure with the duty of good faith in his dealings with his principal touching the subject matter of his authority. The law exacts perfect good faith on the part of an agent not only in form but in substance, and precludes him from obtaining an advantage over his principal in any transaction had by virtue of his agency. (*Calmon* v. *Sarraille,* 142 Cal. 638 [76 Pac. 486]; 1 Cal. Jur., pp. 789, 794, and cases cited.) If the sale had been made for $50,000 and the plaintiff's double dealing had not been discovered and the assignees of his commission had collected the commission of $2,500, as they would have the right to do, and the plaintiff had obtained the $10,000 secret profit, as he had planned, no one would have the hardihood to claim that the District could not have recovered a judgment from him for that amount.

The court failed to find on the allegations of the defendant's answer as to the foregoing relation of the plaintiff with the District but did find that the contract alleged in the complaint had been made and breached and inferentially found that the District had been guilty of bad faith in the commission of the breach for it awarded damages in the sum of $10,000 as the difference between the alleged price agreed to be paid and the value of the estate alleged to have been agreed to be conveyed, as provided for in section 3306 of the Civil Code. There was no evidence of bad faith on the part of the District. The evidence shows overwhelmingly that the directors of the District were proceeding in a manner commensurate with the importance of the transaction in hand. There was an offer of proof that before the next regular meeting of the board the committee had gone thoroughly into the terms and conditions which should be incorporated in a contract of purchase and sale and were ready to report the same to the board. The court sustained an objection to the offer on the ground that these transactions took place after the commencement of this action on April 29th. There was no error in law in sustaining an objection to the offer, but the record discloses that the plaintiff hastened to court before the defendant had a reasonable time to protect itself in the customary way by investigation and report of its committee.

On the record the evidence is insufficient to support the findings and judgment as to the item of $10,000 damages. As to the item of $500, it appears that the District still holds the same as the consideration for a void contract, and it should be returned. This court should find from the evidence that the allegations of paragraph X of the defendant's answer relating to the fiduciary relation of the plaintiff with the District are true. On these findings the judgment should be modified by striking therefrom the sum of $10,000 and as so modified the judgment in the sum of $500 should be affirmed.

Langdon, J., and Waste, C. J., concurred.

Rehearing denied.

Shenk, J., and Langdon, J., dissented.