[S. F. No. 15503. In Bank.—February 28, 1936.]

MRS. GRACE DEERING NELSON, Appellant, v. FERNANDO NELSON & SONS (a Corporation), Respondent.

[S. F. No. 15108. In Bank.—February 28, 1936.]

MRS. GRACE DEERING NELSON, Respondent, v. FERNANDO NELSON & SONS (a Corporation), Appellant.

512

Carroll Single and Stanley J. Cook for Plaintiff and Appellant.

William P. Caubu for Defendant and Appellant.

THE COURT.—A hearing was granted in this case after decision by the District Court of Appeal, First Appellate District, Division One. We now adopt the following portions of the opinion of Mr. Justice *pro tem.* Dooling as part of the opinion of this court.

"Cross-appeals are presented herein from a judgment in favor of plaintiff for $2,500 with interest from May 2, 1929. Plaintiff appeals on the judgment-roll alone, claiming that under the findings she is entitled to a judgment for $18,250 with interest. Defendant on its appeal presents a

typewritten transcript of the evidence and urges that the evidence does not support the findings in a number of particulars.

"In 1926 plaintiff and Frank F. Nelson were husband and wife. Marital differences between them having become acute, on August 11, 1926, they entered into a property settlement agreement. As a part of said agreement Frank F. Nelson agreed to convey to plaintiff three certain lots of land, and to each of their two children one lot of land. Title to these five lots at the date of said agreement was in the defendant herein.

"On August 12, 1926, defendant and Frank F. Nelson entered into a contract of purchase and sale of said five lots wherein and whereby defendant agreed to sell said five lots to Frank F. Nelson. By the terms of this agreement Frank F. Nelson was to make a total down payment of $10,000 and to give his note for the balance of the purchase price of one lot, which we shall designate as the Lincoln Way lot. As to the other four lots the agreement was silent as to the time for paying the balance on the price of each or any of them, but the agreement recited in this regard: 'The delivery to the Purchaser of a good and sufficient deed conveying title to said property and the payment of the balance of the purchase price are concurrent conditions.'

"The evidence shows that in order to finance the down payments on the five lots a bank mortgage of $10,000 was placed on the Lincoln Way lot to secure a promissory note in that amount executed by plaintiff and Frank F. Nelson and endorsed by defendant. The $10,000 thus borrowed was paid to defendant and applied as follows: $7,000 on the purchase price of the Lincoln Way lot; $1,000, respectively, on each of two other lots which by the terms of their property agreement Frank F. Nelson was to convey to plaintiff; and $500, respectively, on each of the lots which by such agreement Frank F. Nelson was to convey to the children. As part of this transaction title to the Lincoln Way lot was conveyed to plaintiff forthwith.

"On August 13, 1926, Frank F. Nelson assigned to plaintiff all of his rights in the aforesaid contract of purchase and sale, and covenanted with her to perform all of its obligations. On May 2, 1929, defendant herein conveyed one of the lots covered by its said contract of sale with Frank F. Nelson to a

third party for $5,000. On learning of this sale, plaintiff demanded of defendant that it pay to her the difference between the selling price to the third party and the price fixed in its agreement of sale with Frank F. Nelson, and defendant thereupon notified plaintiff that it recognized no rights in her under said contract on the expressed ground that the contract was with Frank F. Nelson. This suit followed, in which plaintiff sought to recover from defendant the amounts paid upon the four lots plus the difference between the selling price to Frank F. Nelson and the market value of the lots on May 2, 1929, the date of its repudiation of the contract. It further appears that defendant was a family corporation, the stock of which was all held by a father and five children, one of the children being Frank F. Nelson.

 "With this preliminary statement we shall proceed to a consideration of the findings of fact attacked by defendant as unsupported by the evidence. The court found that 'from and after about said date of August 13, 1926, defendant knew and was informed of said assignment by said Frank F. Nelson to plaintiff'. Plaintiff testified positively that in July or August, 1927, she personally presented the assignment to Fernando Nelson, the president of defendant corporation. Without affecting the rights of the parties in any way we may accept this date as the date of first notice to the defendant. Accordingly this finding is ordered modified by changing the words therein 'said date of August 13, 1926' to read 'August, 1927'.

 "The court found that 'after the execution of said contract, the down payment of $10,000, defendant and said Frank F. Nelson and plaintiff, each and all of them, allowed said contract to continue in full force and effect without further performance by either of them'; and further that 'it is untrue that defendant and said Frank Nelson mutually rescinded or cancelled or terminated or abandoned said contract on August 14, 1926, or at any other time, or at all'; and that 'said defendant Fernando Nelson & Sons, a corporation, did duly approve and execute said contract, and did at all times thereafter, until May 2, 1929, recognize said contract as being in full force and effect'.

"It is claimed by defendant that defendant and Frank F. Nelson mutually abandoned said contract in August, 1928, by oral agreement. Against this testimony plaintiff showed

five bills sent by defendant to plaintiff covering taxes and sidewalk costs on these lots in 1927 and 1928, and on October 29, 1929, after its repudiation of the contract defendant sent a letter to plaintiff purporting to cancel three such bills on the ground stated in the letter: 'These bills were wrongly charged to your personal account as the contract on Lots 17 Block 3273 Lot 2 Block 2484 is with Frank F. Nelson, we are therefore charging his account.' The account books of the corporation also show ·charges against plaintiff in connection with these lots which remained on the books unchanged until after the repudiation of May ·2, 1929, and a charge against Frank F. Nelson on August 1, 1929, in connection with the contract for the purchase of the lots.

"This evidence is ample to support the findings above set out. It is sufficient to support an inference that defendant recognized plaintiff's interest in the contract until May 2, 1929, and recognized the contract as existing and in force between it and Frank F. Nelson even after that date, and is entirely inconsistent with the theory of a mutual abandonment by Frank F. Nelson and defendant in 1928.

██ "In addition to this, defendant had notice of the assignment to plaintiff in August, 1927. The effect of the assignment was to transfer all of Frank F. Nelson's rights under the contract to plaintiff (*Harris* v. *Miller,* 196 Cal. 8, 17, 18 [235 Pac. 981] ; *Kemp* v. *Enemark,* 194 Cal. 748, 756 [230 Pac. 441] ; *Laack* v. *Dimmick,* 95 Cal. App. 456, 469 [273 Pac. 50]), although the burdens of the contract still rested upon Frank. (*Lisenby* v. *Newton,* 120 Cal. 571 [52 Pac. 813, 65 Am. St. Rep. 203].) It would be highly inequitable under such circumstances to permit Frank to surrender by agreement the rights in the contract which were no longer his property but had become the property of plaintiff by his assignment. After defendant had notice of such assignment it could no longer deal with Frank as the owner of the rights under the contract. To foreclose plaintiff of her rights it should have tendered deeds to her and demanded payment of the balance as was done in *Drips* v. *Moore,* 179 Cal. 249, 252 [176 Pac. 159].

· : · · · · · · · · ·

██ "Defendant also attacks the finding that $10,000 was paid on account of the purchase price of the various lots. The basis of this attack is that the $10,000 was borrowed on

the security of the Lincoln Way lot which was up to that time the property of defendant, and that defendant endorsed the note given for its payment, and therefore rendered itself liable thereon. The primary liability to the bank, however, was that of the makers of the note, plaintiff and Frank F. Nelson, and the money was borrowed by them. In return for the payment of $7,000 of this money and the agreement of Frank Nelson to pay the balance of the purchase price of this lot, the lot was conveyed by defendant. Neither the existence of defendant's vendor's lien for the unpaid balance on the purchase price of this lot, nor the secondary liability of defendant as an endorser of the note, can change the fact that the money was borrowed by plaintiff and Frank Nelson and by them paid to defendant. The mortgage has since been renewed, defendant again endorsing the note. We need not here determine what would be defendant's rights in the event of default, foreclosure and deficiency judgment against defendant as endorser. Suffice it to say that none of those contingencies was shown to have arisen.''

The important questions before us relate to the extent of justifiable recovery by plaintiff for the following items: (1) down payments on the lots; (2) profits and increased market value; (3) original purchase price.

■ It is clear from the foregoing discussion that plaintiff is entitled to recover the total amount of all down payments made by Frank Nelson to the defendant corporation on the purchase price of the lots. These are as follows: West Portal lot, $1,000; lot 17, $1,000; lot 30, $500; lot 33, $500; or $3,000 dollars in all. The trial court, as to these items of damage, only allowed $1,000, representing the down payment on the West Portal lot. This was erroneous, and the judgment in favor of plaintiff in this respect must be increased by $2,000.

■ The next question is whether plaintiff may recover for profits and increased market value of the lots. As to the West Portal lot, its original purchase price was $3,500; it was sold by defendant to a *bona fide* purchaser for $5,000, or a profit of $1500. This sale was in repudiation of plaintiff's rights after notice thereof, and plaintiff was clearly entitled to the profit, which the lower court awarded to her. On this point the judgment of the court below was undoubtedly correct. ■ The lower court found, in addition, that

the other three lots had increased in market value from the date of the agreement to the date of repudiation by defendant. Specifically it found that lot 17 had risen in value to $4,750, or an increase of $1,000; lot 30 to $4,000, an increase of $1,000; and lot 33 to $4,500, an increase of $1500. But the court did not include such total increase, namely, the sum of $3,500, in the damages awarded to plaintiff, and of this plaintiff complains. We think her position is well taken. Defendant's deliberate refusal to perform the agreement, after full knowledge thereof, amounted to ''bad faith'' within the meaning of section 3306 of the Civil Code. (See *Haight* v. *Marin Municipal Water District*, 208 Cal. 753 [284 Pac. 926]; *Johnson* v. *Schimpf*, 197 Cal. 43 [239 Pac. 401].) That section provides that where there is bad faith in the breach of an agreement to convey an estate in real property, the damages shall include ''the difference between the price agreed to be paid and the value of the estate agreed to be conveyed, at the time of the breach. . . . '' In other words under this section plaintiff is entitled to recover the increased value of the lots, as set forth above, and these must be added to her recovery.

■ Objection is made, however, that the court's finding of such increased value is not supported by competent evidence. It appears that the plaintiff relied mainly upon certain appraisals made by the San Francisco Bank to establish the value of the three unsold lots as of May 2, 1929. These appraisals were of course hearsay, and could have been excluded upon proper objection. Not only was there no objection, but it was stipulated by counsel that the written memorandum of the bank's appraisals might be introduced in evidence, without any examination of the bank employee thereon. The rule is well settled that incompetent evidence, such as hearsay, may be accepted in proof of the issues of a cause where it is admitted without objection. (*Holzer* v. *Read*, 216 Cal. 119 [13 Pac. (2d) 697]; *Yule* v. *Miller*, 80 Cal. App. 609 [252 Pac. 733]; *Powers* v. *Board of Public Works*, 216 Cal. 546 [15 Pac. (2d) 156].) Moreover, the bank appraisals originated in values set by defendant itself in its application to the bank for a mortgage loan, and these figures given by defendant would seem to be admissions, and competent evidence on the issue.

■ It is further objected by defendant that the evidence is too remote, the bank appraisals being of the year 1926. On

this point there is the testimony of defendant's president that there was a uniform demand for land from 1926 to 1929, and that the value was about the same. George Nelson, secretary of defendant, testified that there was a slight decline in land values during that period. However, it is to be noted that the West Portal lot was sold by defendant at a substantial profit. In this state of the record, it must be clear that there was competent evidence as to the value of the lots in 1929. The trial court did not accept the bank appraisals at their full amount, but in each instance found a lesser value. On lot 17, appraised at $5,000, the court found a value of $4,750; on lot 30, appraised at $4,500, the court found a value of $4,000; on lot 33, appraised at $7,500, the court found a value of $4,500. These findings must be approved, and as already stated, plaintiff is entitled to additional damages representing the increase in value.

The final additional item of damage claimed by plaintiff is based upon the following finding of the trial court: " . . . in 1927 Frank Fernando Nelson endorsed and defendant corporation took over 40 shares of Frank Fernando Nelson's stock and over ten houses partially built by him of a net value greater than his monetary obligations to defendant." This finding is sufficiently supported by the evidence, and it appears therefrom that the defendant corporation, in taking back Frank Nelson's stock and the houses, wrote off his obligations to the corporation. If, therefore, Frank Nelson's obligations to the corporation were cancelled, he owed nothing to the corporation on the lots in question, and plaintiff was entitled to the lots as his transferee without any further payment of the balances allegedly due thereon. It is objected that this finding, if so interpreted, is contrary to the other finding of the court that the parties "allowed said contract to continue in full force and effect without further performance by either of them." The theory of this objection is that the contract of sale was unperformed, that Frank Nelson could not be liable for the price unless a deed was tendered (the payment of the price and the delivery of the deed being concurrent conditions), and that consequently the payment of the balance of the price under the contract was not a "monetary obligation" of Frank Nelson to the defendant in 1927. There is no force in this reasoning. The duty of a purchaser under a contract of sale is to pay the price, and it is an obligation

in any reasonable sense of the term, despite the fact that its enforcement depends upon performance of a concurrent condition, delivery of the deed. Moreover, it was so treated by the defendant, which maintained a ledger account which showed the amount due under the contract as one of the obligations of Frank Nelson, and which also billed him for such amount. It follows, therefore, that nothing was owed on these lots after the above mentioned transfer by Frank Nelson of the stock and houses to defendant, and plaintiff was entitled to recover them or their value, without deduction for the unpaid balance of the price. This requires the addition of the sum of $10,250 to plaintiff's judgment.

The judgment is modified by the addition thereto of the sum of $16,000, making a total of $18,250, with interest thereon at the rate of 7 per cent per annum from and after May 2, 1929, and as so modified, the judgment is affirmed.

Rehearing denied.