### In re CAMPBELL.

### CAMPBELL v. CORPORATION OF AMERICA.
### No. 9040.

Circuit Court of Appeals, Ninth Circuit.
June 26, 1939.

Rehearing Denied July 27, 1939.

Rehearing denied; MATHEWS, C. J., dissenting.

Rupert B. Turnbull and George A. Judson, both of Los Angeles, Cal., for appellant.

Louis Ferrari, of San Francisco, Cal., and Edmund Nelson and Hugo A. Steinmeyer, both of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The appeal is from an order pertaining to the allowance of the claim of appellee, a secured creditor, in a proceeding under § 75(s) of the Bankruptcy Act, 11 U.S.C.A. § 203(s). The referee disallowed the claim in part, but on review the court set the referee's order aside and allowed the claim in full. The question presented is one of some difficulty and a detailed statement of the facts is necessary to an understanding of it.

In 1930 the debtor, who is the appellant, purchased from the Properties Holding Corporation a 200-acre ranch in Tulare County, California, giving as part payment a note of $33,500, with interest at 8%, secured by trust deed on the ranch. The note was payable June 21, 1931, but it was later extended to June 21, 1934.

After her purchase of the property the debtor claimed that the vendor had made certain misrepresentations, and she commenced to negotiate with the vendor for a settlement. With notice of these matters appellee acquired the note and trust deed.

On June 28, 1934, appellee and the debtor entered into a written contract, reciting that the note and trust deed had been assigned to appellee, that in addition to the principal there was due and owing on the note about $8696.39, and that the debtor owed an additional $885.75 for advances made under the trust deed for the care of the property. The contract also recited that the property, which consisted of improved farm land devoted largely to the growing of oranges and grapes, was in a run-down condition, and that appellee, under the provisions of the trust deed, was entitled to take possession.

The contract provided that appellee should go into possession of the ranch, operate it, and "do all things which in its absolute discretion it shall deem necessary for the proper care, maintenance and protection thereof"; that appellee should be entitled to use the tools, machinery and equipment on the place and to the use of the buildings, except three cottages which were reserved to the debtor; and that appellee should have the right to market all fruit and other crops which might be grown on the land, "using its best judgment and discretion as to the manner of sale and disposition thereof."

A further provision of the contract was as follows:

"3. The lender [appellee] agrees that if full payment thereof be made on or before February 1, 1935, it will accept from the borrower [debtor] in full settlement and discharge of the note and obligations secured by said deed of trust, the sum of $15,000, together with advances heretofore made by the lender in the amount of approximately $885.75, with interest on said amounts from the date hereof until paid at the rate of 5 per cent per annum, together with such additional sums as the lender may advance or may have advanced for the irrigation, cultivation, maintenance and care of said property and for the protection or replacement of any of the tools, machinery and equipment thereon, with interest at the rate aforesaid on said advances to the date of repayment, less such amounts as the lender may have collected and received from the sale or other disposition of the fruit and other crops on said land; provided, however, that if the borrower is not able to exercise the privilege hereby granted to pay and discharge said indebtedness on or before the date last mentioned, the lender shall not be deemed hereby to have waived its right to collect the whole indebtedness evidenced by said note and secured by said deed of trust, and any advances made by it with the interest thereon, or to foreclose upon and cause the said property to be sold as provided in said deed of trust; and provided, further, that this agreement shall in no wise be deemed a waiver of any default now or hereafter existing under said deed of trust.

"4. Time is of the essence hereof."

Pursuant to this arrangement appellee went into possession of the property and harvested and disposed of the crops. During a period of some months prior to February 1, 1935, the debtor made numerous attempts to secure from appellee a statement showing the amount of the advances made in operating the ranch, but no such statement was ever presented to the debtor until May 9, 1935. On several occasions prior to February 1, 1935, the debtor was informed by appellee that the payment called for by the contract would not have to be made

promptly on the date fixed, but that she would be afforded a reasonable time after that date in which to pay.

Notwithstanding this promise of indulgence, and without having advised the debtor of the amount payable under the contract, appellee on February 14, 1935, commenced a foreclosure suit against the debtor, and informed her that it would no longer recognize the agreement of June 28, 1934, but would insist upon performance of the original contract. In an effort to protect herself the debtor, on April 12, 1935, filed a petition for relief under § 75 of the Bankruptcy Act. Failing to effect a composition and extension, she filed an amended petition under § 75(s) and was adjudicated a bankrupt on September 28, 1935.

On October 25, 1935, appellee filed its claim as a secured creditor in the sum of $59,164.98, based on the original obligation. On February 16, 1936, the bankruptcy proceeding was dismissed by the district court, upon appellee's motion, on the ground that subdivision (s) of § 75 of the act was unconstitutional. The order of dismissal was reversed by this court on May 4, 1937. Campbell v. Corporation of America, 9 Cir., 90 F.2d 102. During all this time appellee remained in possession and is still in possession of the property.

Thereafter the debtor filed objections to appellee's claim, alleging that appellee acquired the note and trust deed with full knowledge that she was claiming misrepresentations in the sale of the property to her, and that, in the light of this circumstance, the agreement of June 28, 1934, was made; that on or before February 1, 1935, she was ready, willing and able to perform that agreement, but was prevented from doing so by the failure of appellee to render a statement and by its promise to extend the time in which she might avail herself of the option agreement; that she was then (at the time of filing the objections) ready, willing and able to make payment and tendered the same therewith; and that appellee was estopped to assert any claim based on the original debt. The debtor further alleged that the value of the property was far in excess of the amount owed by her, and that the claimant should be compelled, before having its claim allowed in any sum, to account for crops and to apply the net amount remaining from such crops, after payment of the cost of producing the same, to the payment of any sum found to be due from the bankrupt to the claimant; and that

appellee had failed to account for the proceeds of the crops.

By answer appellee denied that there was any extension of time in which to pay under the agreement of June 28, 1934, and that the debtor was ever ready, willing or able to pay the sums provided in such agreement.

After a hearing upon the issues so framed, the referee, on December 9, 1937, made findings and conclusions to the effect that the debtor was entitled to the benefit of the agreement of June 28, 1934. Upon the basis of this agreement, and with the aid of an accounting made by appellee, the referee allowed the latter's claim in the amount of $20,042.55, as of November 1, 1937, subject to a further accounting as to the continued operation of the ranch. In reaching this result the referee found, in addition to the above facts, that on February 1, 1935, and at all times since, the debtor has been ready, willing and able to pay the sums required under the agreement of June 28, 1934; that at the time the foreclosure suit was begun the debtor did not know the amount of advances made by appellee under the terms of such agreement, such matter being peculiarly within the knowledge of appellee, and that she was not informed thereof until May 9, 1935; and that, had it not been for the conduct and statements of appellee, the debtor, on February 1, 1935, would have made a tender or an actual deposit of the amount owing.

Upon review of the referee's order, the court held that the debtor was not in position to invoke the agreement of June 28, 1934, and that appellee's claim should be allowed upon the basis of the original obligation, the amount thus allowed being $57,529.84, subject to a further accounting. The court affirmed the finding that the debtor was not advised of the net amount of the advances until May 9, 1935, but held that the evidence did not support the finding that the debtor was prevented from making payment because of the uncertainty of the amount due. The court also affirmed the finding that the debtor was told that payment would be accepted within a reasonable time after February 1, 1935, but reversed the finding that she was at all times ready, willing and able to pay.

The debtor contends that the court erred in holding that the oral extension of time for payment under the agreement of June 28, 1934, was not supported by consideration, that it did not constitute a waiver, and

that no estoppel existed in favor of the bankrupt.

 We agree that the oral extension was lacking in consideration. Stroud v. Thomas, 139 Cal. 274, 276, 72 P. 1008, 96 Am.St.Rep. 111; Graves v. Burch, 26 Wyo. 192, 181 P. 354, 5 A.L.R. 1216. But we think the weight of the evidence supports the finding of the referee that the debtor was at all times ready, willing and able to pay, and would have paid had it not been for the promise of appellee to extend the time, coupled with its failure to inform the debtor as to the net amount which had accrued under the agreement. The testimony of the witness Willcox, the debtor's attorney, together with other evidence of similar import, was sufficient to sustain the finding of the referee that the debtor was lulled into a sense of security by appellee's conduct and that she changed her position in reliance thereon. Under these circumstances appellee must be held to have waived the requirement of strict performance on February 1, 1935. It is estopped to assert that its promise of indulgence was without consideration. Williston on Contracts, Rev. Ed., Vol. 1, p. 494, ff; id., Vol. 3, p. 1990; Restatement, Contracts, § 90.

 We think the record also supports the finding of the referee that the debtor was prevented from making payment because of the failure of appellee to inform her of the amount of receipts and advances under the agreement. In reversing this finding the court said that the debtor knew "that at least the principal sum was due, the uncertainty existing only as to the amount of advances." Apparently the court wrongly construed the agreement as requiring payment of the principal sum in any event, regardless of the amounts appellee might have received from the sale of crops. Further, the court failed to recognize the fact that the agreement of June 28, 1934 merely gave the debtor an option to satisfy the original debt by a performance of the new contract.

 The option called for a unilateral contract, which might be engendered by payment, or a tender, by the debtor within the time stated, or within the time as extended. Williston on Contracts, Vol. 3, p. 2390. But the very nature of the option agreement imposed upon appellee a duty to render a statement as to the exact amount which had accrued under that agreement. That amount might have been more or less than the so-called "principal sum". Certainly the debtor had a right to know how much she would have to pay before she could be required to perform. This is not a case in which a debtor, who actually owes a debt, is required to tender as much as he knows to be due. Here the very willingness of the debtor to exercise her rights under the new agreement, to say nothing of her ability to do so, depended upon the amount "due" thereunder. It might well be that the amount of the advances under such an agreement would be so great that the debtor would decide not to exercise the option. Or, on the other hand, the proceeds of the crops might be so far in excess of expenditures that the debtor would not be required to raise as much as the "principal sum". In any event we hold that the debtor was under no duty to perform so long as she was prevented from doing so by appellee. See Williston on Contracts, Vol. 1, p. 176, note 4; Haight v. Marin Municipal Water District, 208 Cal. 753, 284 P. 926.

 Without having complied with the debtor's repeated requests for a statement, and despite its promise of indulgence, appellee commenced a foreclosure suit, thus compelling the debtor to resort to bankruptcy. It was almost a month after the filing of her petition under § 75 that the debtor was finally furnished a statement. Under these facts we think appellee is in no position to deprive the debtor of her rights under the option contract.

There is no question before us concerning the further disposition of the case, other than that involved in the allowance of the claim. We hold merely that the referee's ruling as to the amount in which the claim should be allowed was correct.

Reversed.