**In re CAMPBELL.**

No. 3899.

District Court, S. D. California, N. D.

Oct. 14, 1940.

Willcox & Judson and Rupert B. Turnbull, all of Los Angeles, Cal., for bankrupt.

Edmund Nelson and Hugo A. Steinmeyer, both of Los Angeles, Cal., for creditor.

YANKWICH, District Judge.

Barbara Campbell, the bankrupt, filed her petition under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, on April 12, 1935. Unable to effect a composition and extension, she filed an amended petition under Section 75, sub. s, 11 U.S.C.A. § 203, sub. s, and was adjudicated a bankrupt on September 28, 1935. The claim of Corporation of America was filed in the proceedings. On December 14, 1935, an order was made restraining proceedings against the bankrupt for a period of three years. Corporation of America was and is in possession of the real property of the bankrupt in accordance with an agreement made on June 28, 1934, prior to the institution of the proceedings.

The agreement states: "Said land and the trees thereon are in a condition of neglect by reason of insufficient irrigation, cultivation, and the doing of other things necessary for their proper maintenance and protection."

It provides also: "1. The borrower agrees that the lender by its agents and employees, may immediately enter upon and take possession of said land and the improvements thereon, and that while in such possession the lender may irrigate, cultivate, fertilize and otherwise care for said land and the trees and vines thereon, and do all things which in its absolute discretion it shall deem necessary for the proper care, maintenance and protection thereof. The lender shall also be entitled, while in possession of said land, to use the buildings thereon, excepting three cottages which the borrower reserves the right to occupy and use until such time as her title to said encumbered land may be lost by foreclosure or otherwise, and the lender shall also be entitled to use the tools, machinery and equipment on said land, subject only to any prior liens and rights of other persons".

Under the agreement, the creditor is entitled to: "such additional sums as the lender may advance or may have advanced for the irrigation, cultivation, maintenance and care of said property and for the protection or replacement of tools, machinery and equipment thereon * * *".

The original claim, as filed in these proceedings, was for $59,000. It was based upon a promissory note executed by the bankrupt in the principal sum of $33,500, and interest and advances made by the creditor in the care, maintenance, preserva-tion, and operation of the real property. It was finally allowed by the Conciliation Commissioner in the sum of $20,042.55 as of November 1, 1937, with interest at five per cent per annum from that date until paid, subject to an accounting by the creditor for crops harvested and to be harvested, and such additional advances as might be made by it.

On review, the District Court, on July 7, 1938, reversed the order. On appeal, the Circuit Court of Appeals reversed the order of the District Court and affirmed the order of the Conciliation Commissioner. For fuller details on the nature of the dispute, from its inception to the date of the decision, reference is made to the opinion of the Circuit Court of Appeals in Campbell v. Corporation of America, 9 Cir., 1939, 105 F.2d 197, 124 A.L.R. 1243. A petition for certiorari was denied by the Supreme Court on October 16, 1939, Corporation of America v. Campbell, 1939, 308 U.S. 593, 60 S.Ct. 123, 84 L.Ed. 496.

Thereafter, the creditor filed an accounting of its administration of the property from November 1, 1937, to December 13, 1939. This was accompanied by a petition for an order settling the account and authorizing foreclosure of the deed of trust.

The debtor filed objections to the account and a petition for an order restraining the sale of the deed of trust for an additional period. After a hearing before the Conciliation Commissioner, he made an order dated February 27, 1940, in which he denied interest on the claim, disallowed a portion of the cost of a well in the sum of $3,284.82, and required the creditor to account for moneys not yet received. He declined to entertain the creditor's motion for leave to foreclose and enjoined foreclosure until the order fixing the amount of the indebtedness should become final. Before me is a review of this order.

In what follows are given the conclusions reached on each of these matters and the reasons for our disagreement with the findings and conclusions of the Conciliation Commissioner.

I. The portion of the order which denied to the creditor interest on its claim (Findings I and III) is reversed and the interest, to be computed to the date hereof, is allowed in said accounting.

The Referee and Commissioner grounded his denial upon the proposition that the amount of the debt was determined as of

November 1, 1937, and that the debtor should not pay for the interest which had accumulated during the unsuccessful challenge of that order by the creditor. The vice of the position lies in the fact that it assumes that the offer which had been made prior to November 1, 1937, and which resulted in the reduction of the debt, also relieves the debtor from the payment of interest after such reduction.

The order of November 1, 1937, fixing the claim in the reduced amount, specifically provided for interest from the date of its allowance to the date of payment.

The debt on which it is based was merged into the order, subject to review and appeal. On review to the District Court, the order of the Commissioner was reversed. On appeal to the Circuit Court of Appeals, the judgment of the District Court reversing the Conciliation Commissioner's order was itself reversed. The original order of November 1, 1937, thereby stood affirmed, in all its terms.

Certiorari having been denied by the Supreme Court, that order became final.

Such finality attached to all its terms, including the item of interest which it allowed from its date. The debtor here did not file a cross appeal questioning the allowance of interest. She is, therefore, precluded from questioning it in this proceeding. See United States v. California & Oregon Land Co., 1904, 192 U.S. 355, 358, 24 S.Ct. 266, 48 L.Ed. 476; Watkins v. American National Bank of Denver, 8 Cir., 1905, 134 F. 36; Srere v. Gottesman, 2 Cir., 1920, 270 F. 188; Dern v. Tanner, 9 Cir., 1938, 96 F.2d 401; Mendez v. Baetjer, 1 Cir., 1939, 106 F.2d 163; Rodman v. Rogers, 6 Cir., 1940, 109 F.2d 520. She cannot claim the benefit of the final judgment, a reduced indebtedness, and repudiate the detriment, interest on it.

II. The portion of the order disallowing the major part of the cost of a water well —the sum of $3,284.82—(Finding IV), is reversed, and the sum is allowed in the accounting.

The ground upon which this was disallowed was that an expenditure of $800 on the well in operation would have supplied additional water to fulfill the needs.

The conclusion is based chiefly upon the testimony of one T. A. Alexander, a graduate engineer who, as representative of a pump company, had installed the equipment in the well.

His testimony leaves much to be desired. A reading of it might lead to the conclusion that additional equipment and a deepening of the well would, in themselves, have resulted in additional water supply.

But elsewhere in his examination he testified to the fact, which conforms to common knowledge, that an increase in supply could not be secured in the face of a sinking water table.

The evidence is undisputed that there had been a rescission of the water level on the property, from the time the creditor went into possession, of from ten to fifteen feet. If receding water levels, which indicate the diminution of the water strata, through use, could be remedied by additional equipment, the problem which has confronted California and other arid regions would be easy of solution.

We know that the receding water levels are one of the greatest problems confronting the State as witness the various attempts to supplement our supply by sources lying beyond the confines of the state.

But, grant that the witness' testimony shows that the expenditure of $800 would have supplied the additional water, that does not call for the denial of the full expenditure incurred. The agreement of June 28, 1934, which put the creditor in possession, gave to them the right to occupy, exploit and develop the property for that purpose. The creditor went on the property as the result of the debtor's voluntary act. The property was in poor condition. The years of stewardship of the creditor have resulted in its general improvement and enhancement of its value.

There were two wells on the property when the creditor went into possession. Only one was producing. The creditor, and those through whom it was operating the property, saw only one way of meeting the situation,—drilling another water well. The well is an additional water supply, adding value to the land. If, as stated at the hearing, the debtor is anxious to get back her property by paying the amount due—and that should be the final termination of this proceeding,—she will benefit by the expenditure made for the added water supply. The creditor would gain nothing unless, at a forced sale, it purchased the property. All it is entitled to receive is its debt, as determined by this Court.

Grant that, despite the existence of the agreement of June 28, 1934, giving right of

possession and exploitation to the créditor, the bankruptcy court could deny sanction to useless or wasteful expenditures, the showing is entirely lacking that this was the case here.

The need for the additional supply cannot be questioned. The allowance of $800 by the Commissioner is proof that there was a need to be supplied.

The protest of the debtor against the expenditure, when learning that it was about to be made, is not sufficient to make us substitute her judgment as to what was needed for that of the creditor, operating the property.

■ If, as seems clear, additional water supply was needed, the creditor should not suffer for exercising that discretion which the voluntary act of the debtor in surrendering possession and management gave to it. See 41 C.J. 615; 2 Jones on Mortgages, 8th Ed., p. 1446; Huscheon v. Huscheon, 1886, 71 Cal. 407, 12 P. 410.

III. The portion of the order which compelled the creditor to account now for moneys not yet received, returns from the crops of 1939 and moneys in revolving funds in the hand of certain fruit associations, is reversed. The creditor concedes that the moneys from both sources belong to the debtor. It is willing to assign them to the debtor.

■ It should not be required either to credit on the indebtedness money which it may not receive for some time or to have its right to foreclose conditioned upon the final determination of the actual amounts that may be received from these sources.

■ IV. The challenge to the portion of the order which postponed determination of the creditor's motion for leave to foreclose and enjoined foreclosure until the order fixing the amount of indebtedness should have become final, turns on questions which are also involved in the original petition before me for the settling of the account and for leave to foreclose. The questions before the Referee have, therefore, become moot. The institution of the original petition is, in effect, an abandonment of the review on these questions. They will be determined by me in a separate order upon the petition.

However, to avoid the confusion which might arise from two identical orders, one on review and the other on an original proceeding, this portion of the order will also be reversed.