[Civ. No. 21185. First Dist., Div. One. Mar. 12, 1964.]

ORVEL A. FORSLUND, Plaintiff and Appellant, v. ELEANOR FORSLUND, Defendant and Respondent.

Adams, Ball & Kraft, Rudolph G. Kraft, Jr., and Eleanor M. Kraft for Plaintiff and Appellant.

Newman, Marsh & Furtado and Raymond L. Marsh for Defendant and Respondent.

MOLINARI, J.— This is an appeal by plaintiff father from an order modifying a prior order granting him the custody of two minor children.[1]

### Questions Presented

1. Did the court lack jurisdiction to change custody on the ground that the children involved are both domiciled and physically residing in another state?

---

[1]An order changing the custody of a minor from the existing custody status and transferring such custody to another is an appealable order. (*In re Frost*, 134 Cal.App.2d 619, 621 [286 P.2d 378].)

2. Was the order for modification void as violative of due process on the ground that defendant did not give plaintiff and the minor children proper notice of the proceedings for modification and an opportunity to be heard therein?

3. Did the trial court abuse its discretion in modifying the custody order?

## The Record

On April 23, 1957, by its interlocutory decree of divorce, the court below determined that a divorce ought to be granted in an action brought by plaintiff husband against defendant wife. The custody of the three minor children of the parties was not determined in said decree because the children were then wards of the County of Alameda. Thereafter, on July 10, 1961, a final decree of divorce was entered *nunc pro tunc* as of April 25, 1958.[2] On September 7, 1961, the trial court made its order that defendant have the custody of the minor child, Lawrence, and that plaintiff have the custody of the minor children, Sharon and Robert.[3] Subsequently, and on May 3, 1962, an order to show cause was issued in the court below, upon the affidavit of defendant, ordering plaintiff to appear on May 29, 1962, to show cause why the order of September 7, 1961, should not be modified as requested in said affidavit. In said affidavit defendant requested that the court make an order granting the custody of all three minor children to her. Copies of said order to show cause and affidavit were mailed on May 7, 1962, to William Berger, an attorney at law;[4] to the County Clerk of Alameda County, and to plaintiff at 807 Waverly Street, Palo Alto, California. When the order to show cause came on for hearing on May 29, plaintiff did not appear either in person or by attorney.

[2]The final decree has not been made a part of the record on appeal. The record shows that, although the motion for entry of a final judgment of divorce *nunc pro tunc* was made by plaintiff, the final judgment was granted to defendant.

[3]Said order also contains the following statement which precedes said custody orders: "It is ordered that defendant's motion for modification of custody is granted as to the child Lawrence S. Forslund and denied as to the children Sharon Ann Forslund and Robert Alan Forslund." Said motion is not a part of the record on appeal, nor does such record disclose whether any previous custody order had been made or the provisions thereof, if one was made.

[4]The record discloses that William Berger appeared in the proceedings as attorney for plaintiff on July 10, 1961, when plaintiff moved to have the final judgment of divorce entered *nunc pro tunc* as of April 25, 1958.

Defendant was called as a witness, and after testifying that plaintiff had not paid child support for Lawrence, that he had left his residence, and that she did not know his whereabouts, the court observed that it could not make an order changing custody at that time "on the present state of the record because there is no indication where the children are or the living conditions." Thereupon, and pursuant to the trial court's suggestion, the matter was referred to the probation department for "a supplemental report and request that the whereabouts of the plaintiff be ascertained if possible," and the hearing was continued to June 26, 1962.[5] When the matter came on for hearing on June 26 plaintiff was not present nor did he appear by counsel. The court then announced that it had read the supplemental report of the probation officer, and after observing that said report indicated that plaintiff's present whereabouts were not clearly established, that the children were "apparently" with plaintiff, that plaintiff "appears not to have complied with the prior Order of the Court," and that the facts in the probation officer's report "indicate that the plaintiff is subjecting these children to a rather irregular and poorly controlled living condition," and that "it appears to be to the best interest of these two minor children that they be with their mother," ordered that the September 7, 1961, order be modified so as to award the custody of Sharon and Robert to defendant. A notice of appeal from the said order, made on June 26, 1962, and entered on July 2, 1962, was filed by plaintiff on August 1, 1962.

### Jurisdiction of Subject Matter

■ Plaintiff contends that the California court was without jurisdiction to change custody because the children were both domiciled and physically present in Vermont. ■ It should be here noted that there is nothing in the record to show that the children were in fact physically present or domiciled in Vermont. The only reference in the record before the court below purportedly touching the subject of the residence and domicile of Sharon and Robert appears in the supplemental report of the probation officer. We shall hereinafter particularly discuss the evidentiary effect of this report. However, assuming for our present purposes that its contents are admissible all that it states regarding the sub-

---

[5] Prior to the making of this reference the trial court stated "Let me read the report here, first."

ject at hand is that "The exact whereabouts of the plaintiff and the minors is unknown. His mailing address is P.O. Box 725, Burlington, Vermont." Such a statement, in our opinion, is insufficient to establish the residence or domicile of said children. ▪▪▪ Suffice it to say, however, the California court would have jurisdiction to modify the custody award, notwithstanding the children's physical presence and domicile in Vermont, at the time the subject motion to modify was filed and acted upon. Section 138 of the Civil Code provides that "In actions for divorce or for separate maintenance the court may, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any of the children of the marriage, make such order for the custody of such minor children as may seem necessary or proper and may at any time modify or vacate the same." This section has been held to expressly reserve to the California divorce court jurisdiction to modify its custody awards even though the children later become domiciled in another jurisdiction. (*Davis* v. *Davis*, 177 Cal.App.2d 75, 77 [1 Cal.Rptr. 923]; *Dolgoff* v. *Dolgoff*, 81 Cal.App.2d 146, 148 [183 P.2d 380]; *Marts* v. *Marts*, 15 Cal.App.2d 224, 225 [59 P.2d 170]; *In re Kolb*, 60 Cal.App. 198, 200-201 [212 P. 645]; *Maloney* v. *Maloney*, 67 Cal.App.2d 278, 280 [154 P.2d 426]; *Rude* v. *Rude*, 148 Cal.App.2d 793, 797-798 [307 P.2d 679]; *Leverett* v. *Superior Court*, 222 Cal.App.2d 126, 132 [34 Cal.Rptr. 784].) This holding is in accord with that of a majority of the jurisdictions of this country, and is predicated upon the rule that a divorce court, which at the time of entry of its original decree had jurisdiction to make a custody award, retains continuing jurisdiction to modify such custody even though the children are domiciled and actually present in another jurisdiction. (See *Davis* v. *Davis, supra,* at p. 77; *Dolgoff* v. *Dolgoff, supra,* at p. 148; and see *Sampsell* v. *Superior Court,* 32 Cal.2d 763, 778 [197 P.2d 739].)

### Jurisdiction of the Person

▪▪▪ Plaintiff asserts that the trial court did not acquire jurisdiction over him or the children because neither he nor they were served with a copy of the subject order to show cause. As hereinbefore narrated, the order to show cause was sent by mail to plaintiff's attorney of record, to the county clerk, and to plaintiff at an address in Palo Alto, California. ▪▪▪ The notice required to be given to the respondent of an application for an order modifying the provisions of an order for child custody or support in a divorce action is that

provided for in the Code of Civil Procedure relating to the giving and service of notice of motions in civil actions, i.e., part 2, title 14, chapters 4 and 5 (§§ 1003 to 1008, incl., and 1010 to 1020, incl.).[6] (*Moore* v. *Superior Court*, 203 Cal. 238, 244 [263 P. 1009] ; *Foy* v. *Foy*, 23 Cal.App.2d 543, 546-547 [73 P.2d 618] ; see *McAuliffe* v. *Coughlin*, 105 Cal. 268, 270 [38 P. 730], and *Sturm* v. *Sturm*, 138 Cal.App.2d 25, 28 [291 P.2d 527], to the effect that an order to show cause is simply a notice of motion ; and see § 1006.)

We shall first consider the question of the service upon plaintiff. ■ It is well settled that where the custody of a child has been awarded to one parent by a decree of divorce, a subsequent order modifying that decree and awarding the custody of the child to the other parent can only be made after notice to the custodial parent, and an order made without notice is void. (*In re Saunders*, 76 Cal.App.2d 635, 637 [173 P.2d 818] ; *Lansdale* v. *Lansdale*, 173 Cal.App.2d 432, 433 [344 P.2d 622].) If plaintiff was a resident of this state service could be made upon him or his attorney as provided in section 1011. That section provides that "[t]he service may be personal, by delivery to the party or attorney on whom the service is required to be made" or in the several methods and under the circumstances therein specified. ■ It is also well settled that "delivery" constituting personal service within the meaning of this section may be effected by mailing the notice or paper to be served. (*Hunstock* v. *Estate Development Corp.*, 22 Cal.2d 205, 211 [138 P.2d 1, 148 A.L.R. 968] ; *Colyear* v. *Tobriner*, 7 Cal.2d 735, 743 [62 P.2d 741, 109 A.L.R. 191] ; *Shearman* v. *Jorgensen*, 106 Cal. 483, 485 [39 P. 863] ; *Heinlen* v. *Heilbron*, 94 Cal. 636, 640 [30 P. 8] ; § 1012.) Such a service is termed a "substituted service" and is intended to take the place of and be equivalent in point of law and effect to a personal service. (*Heinlen* v. *Heilbron, supra*, at p. 640.) The only method of service attempted in the instant case was by mail. ■ In making service by mail there must be a strict compliance with sections 1012, 1013 and 1013a. (*Carlon* v. *Gray*, 10 Cal.App.2d 658, 663 [52 P.2d 966] ; *Marsden* v. *Collins*, 23 Cal.App.2d 148, 149 [72 P.2d 247].) Section 1012 provides that "Service by mail may be made where the person on whom it is to be made resides or has his office at a place where there is a delivery service by mail, or where the person making the

---

[6] All statutory references made hereinafter, unless otherwise indicated, are to the Code of Civil Procedure.

service and the person on whom it is to be made reside or have their offices in different places between which there is a regular communication by mail." (See *Marsden* v. *Collins, supra*, where it was held that service of an answer and cross-complaint may be made by mail under this section.) Section 1013 prescribes the method by which service by mail is to be made and when such service is complete; and section 1013a provides how proof of service by mail may be made.

Turning to the instant case we find personal service by mail upon both plaintiff and his attorney within the meaning of section 1011. The record shows that there is attached to the original order to show cause a "Certificate of Service by Mail" meeting the requirements of section 1013a, subdivision (2), and showing service as prescribed in section 1013. With respect to plaintiff the certificate shows that one Raymond L. Marsh, whose business address is given, is an active member of the State Bar of California and not a party to the cause, and that on May 7, 1962, he deposited in the United States mail at Hayward, California, a sealed envelope containing a copy of the aforesaid order to show cause and affidavit with postage fully prepaid thereon addressed to Orvel Alan Forslund[7] at his "office (residence) address 807 Waverly Street, Palo Alto, California." An identical certificate is affixed to the order to show cause showing the mailing of said papers to "William Berger, Attorney at Law, at his office (residence) address 105 Montgomery Street, San Francisco, California." Judicial notice can be taken, of course, that there is a regular communication by mail between Hayward and Palo Alto and Hayward and San Francisco.

The certificates of mailing, in the instant case, were in strict compliance with sections 1012, 1013 and 1013a. Insofar as plaintiff is concerned it shows a service upon him at his office or residence in Palo Alto. Accordingly, there is a presumption that service was made upon plaintiff in this state as required by these sections, and in the absence of a showing sufficient to overcome such presumption the certificate of mailing was sufficient to give the trial court jurisdiction to proceed with the hearing of the order to show cause. (§ 1963, subd. 24; *Traders Credit Corp.* v. *Superior Court,*

---

[7]This is the full name of plaintiff as it appears in the papers and proceedings which make up the record in the instant action. There is a presumption of identity of person from identity of name. (§ 1963, subd. 25; *Lundblade* v. *Phoenix*, 213 Cal.App.2d 108, 112 [28 Cal.Rptr. 660].)

111 Cal.App. 663, 666 [296 P. 99]; *Gill* v. *Southern Pacific Co.*, 174 Cal. 84, 87 [161 P. 1153]; *Otsuka* v. *Balangue*, 92 Cal.App.2d 788, 791 [208 P.2d 65]; *First Nat. Bank* v. *Coast Consol. Oil Co.*, 84 Cal.App.2d 250, 254 [190 P.2d 214]; *Leplat* v. *Raley Wiles Auto Sales*, 62 Cal.App.2d 628, 635-636 [145 P.2d 350].) ■ The burden is not upon the sender to show the notice was actually received by the addressee. (*Caldwell* v. *Geldreich*, 137 Cal.App.2d 78, 81 [289 P.2d 832].) ■ As hereinabove pointed out the record is barren of any showing that plaintiff was not a resident of California or that he did not reside or have his office in Palo Alto. Moreover, no proceedings were taken by him to overcome the effect of such certificate of mailing, either by a motion to quash service or, collaterally, by an independent proceeding predicated upon extrinsic fraud. Under the state of the record, therefore, the evidence establishes that plaintiff was personally served in Palo Alto on May 7, 1962, that service was complete on said day under section 1013 (see *Welden* v. *Davis Auto Exchange*, 153 Cal.App.2d 515, 521 [315 P.2d 33]), and that such service was made more than 10 days before the date set for hearing as prescribed by section 1005.

Personal service pursuant to section 1011 was likewise made by mail upon plaintiff's attorney of record. What we have hereinbefore said concerning the efficacy of the certificate of mailing is likewise applicable to the service made upon Berger. Where service on an attorney of record is permitted such service binds the client until the attorney is discharged or substituted out of the case as provided by law. (*Reynolds* v. *Reynolds*, 21 Cal.2d 580, 584 [134 P.2d 251]; *People* v. *Bouchard*, 49 Cal.2d 438, 440 [317 P.2d 971]; *Carrara* v. *Carrara*, 121 Cal.App.2d 59, 61 [262 P.2d 591].) While the authority of an attorney ordinarily ends with the entry of judgment, except for the purpose of enforcing it or having it set aside or reversed, a judgment of divorce, however, insofar as it relates to the custody and maintenance of minor children is not final. As to such matters the litigation is regarded as still pending. (*Reynolds* v. *Reynolds, supra*, at pp. 583-585; *Russ* v. *Russ*, 68 Cal.App.2d 400, 405 [156 P.2d 767].)[8] These principles are conceded by plaintiff. He con-

---

[8]It should be here noted that in 1963 the Legislature enacted a new section providing that an attorney of record in a domestic relations proceeding may withdraw, at any time subsequent to the time when any judgment in such action or proceeding becomes final, by filing a notice of withdrawal. (See § 285.1.)

tends, however, that his attorney was discharged prior to the filing of the instant proceeding. In support of this assertion he relies upon the fact that he appeared in propria persona at the September 7, 1961, hearing wherein he was awarded custody of Sharon and Robert. There is no question that a client can discharge his attorney of record at any time and substitute another in his place. (*O'Connell* v. *Superior Court*, 2 Cal.2d 418, 421 [41 P.2d 334, 97 A.L.R. 918] ; *Estate of McManus*, 214 Cal.App.2d 390, 396 [29 Cal.Rptr. 543].) However, in order to do so he must conform to the requirements set forth in sections 284[9] and 285.[10] (*Reynolds* v. *Reynolds*, supra, at pp. 583-584; *People* v. *Bouchard*, supra, at p. 440: *Epley* v. *Califro*, 49 Cal.2d 849, 854 [323 P.2d 91] ; *Scarpel* v. *East Bay Street Ry.*, 42 Cal.App.2d 32, 33 [115 P.2d 862] ; *Sherman* v. *Panno*, 129 Cal.App.2d 375, 379 [277 P.2d 80].) Accordingly, where a party who has appeared in an action by an attorney thereafter takes part in the proceedings in propria persona without following the procedure prescribed in sections 284 and 285, subsequent pleadings and notice therein are nevertheless properly served upon the attorney who has appeared for such party. (*Security Bank etc. Co.* v. *Wilbur*, 56 Cal.App. 604, 606 [205 P. 886].) In the instant case there is nothing in the record to show such a discharge or substitution, nor is it contended by plaintiff that sections 284 and 285 were complied with.

 Assuming *arguendo* that plaintiff did reside out of the state when the subject proceedings were initiated, as contended by him, service upon his attorney of record was sufficient to give the court below jurisdiction over his person. (*Foy* v. *Foy*, supra, 23 Cal.App.2d 543, 546-547; *Russ* v. *Russ*, supra, at pp. 405-406.) Section 1015 provides, in pertinent part, that ''When a plaintiff ... who has appeared, resides out of the State, and has no attorney in the action or proceeding, the service may be made on the clerk or on the judge where there is no clerk, for him. But in all cases where a party has an attorney in the action or proceeding, the service of papers, when required, must be upon the attorney

---

[9]§ 284 provides that an attorney may be changed upon consent of both client and attorney, filed with the clerk or entered upon the minutes, or upon the order of court upon applications of either the client or attorney upon notice.

[10]§ 285 provides that when an attorney is changed as provided in § 284 written noitce of such change and the substitution of a new attorney, or the appearance of the party in person, must be given to the adverse party, and that until then he must recognize the former attorney.

instead of the party, except service of subpenas, of writs, and other process issued in the suit, and of papers to bring him into contempt.'' This statutory provision for giving notice has been held to be constitutional, the rationale being that once the court has jurisdiction over the subject matter of the proceeding and over the person of the party affected, it may bind such person by orders made after he has left the state. (*Reynolds* v. *Reynolds, supra,* at p. 583.) Accordingly, since California had continuing jurisdiction to modify the subject custody order, plaintiff cannot avoid such jurisdiction by reason of his having left the state. (*Leverett* v. *Superior Court, supra,* 222 Cal.App.2d 126, 134; *Reynolds* v. *Reynolds, supra,* at p. 583.) Jurisdiction over his person in subsequent modification proceedings relative to such custody order could, therefore, be obtained under section 1015 by service of notice upon his attorney of record. There is no requirement, where he has an attorney of record, that he be served personally when he resides out of the state. (See *Conae* v. *Conae,* 109 Cal.App.2d 696, 697-698 [241 P.2d 266], where it was held that a provision in the order to show cause that the party be served personally was a nullity and void.)

Jurisdiction of the California court could not be avoided, moreover, by plaintiff's leaving the state and discharging his California attorney. Assuming that plaintiff had discharged his attorney, as contended by him, he was still amenable to the jurisdiction of this state under section 1015. As we noted in *Leverett,* ''Section 1015 informs parties who have appeared in an action or proceeding in this state that if they have no attorney of record the clerk of the court becomes their agent for the purpose of service. Accordingly, the burden is upon said parties to keep an attorney of record or to make such arrangements for notice with the clerk as they shall deem advisable.'' (Pp. 134-135.) In the instant case the record shows that pursuant to a certificate of mailing, identical to that made with respect to plaintiff and his attorney, service by mail of the subject papers was made on May 7, 1962 upon ''Jack G. Blue, County Clerk, at his office (residence) address Alameda County Courthouse, 1225 Fallon Street, Oakland 12, California.'' Under the applicable principles hereinabove discussed relative to service by mail, such notice sufficed, in the event plaintiff had no attorney in the instant proceedings, to give him notice thereof and to give the court below jurisdiction over his person.

Plaintiff makes the further contention that since no-

tice of the hearing in question was not given to the two minor children involved, the court erred in not affording them an opportunity to be heard. He cites, in support of his contention, the following statement from Witkin: "A custody proceeding is *in personam*, not in rem; hence the process requirements of personal actions apply, and notice of the proceedings must be given both to the child and the parents." (1 Cal. Procedure, § 111, p. 376.) Witkin cites *In re Saunders, supra,* 76 Cal.App.2d 635, 637 [173 P.2d 818], as authority for this proposition. Turning to the *Saunders* case we find that it does not furnish authority in support of plaintiff's position, but that it is merely declarative of the general rule that a change of custody made without notice to the *custodial parent* is void. No mention is made therein of the necessity of giving notice to the child. We apprehend the California rule to be that proper notice to the custodial parent suffices to give the court jurisdiction to pass upon such child's custody. In *Dolgoff* v. *Dolgoff, supra,* 81 Cal.App.2d 146, the appellate court held that where the court had acquired jurisdiction of the parties to a divorce suit, and thus retained ancillary jurisdiction to modify the decree of divorce by awarding to either spouse the custody or necessary maintenance of their minor child, the court had authority to make such modification upon application of one spouse, upon due notice to the other, notwithstanding that the latter had acquired residence with the child in another state and the child was absent from this state. In *Dolgoff* the court stated that "the absence of the minor child from this state during the trial and subsequent proceeding for maintenance is immaterial." (P. 150.) The rationale of *Dolgoff* is that while the child is not formally a party to the divorce action between its parents, the child appears before the court because the court has jurisdiction over the parents who submit to it the determination of who, as between them, should have the custody or control of the child, and who should support it. (See *Leverett* v. *Superior Court, supra,* at p. 132; and *In re Kolb, supra,* 60 Cal.App. 198, 200.)

### The Trial Court's Determination

Plaintiff contends that there is no substantial evidence supporting the trial court's order changing the custody of Sharon and Robert from himself to defendant, and that in making such order the court abused its discretion. "An application for a modification of an award of custody is addressed to the sound legal discretion of the trial court,

and its discretion will not be disturbed on appeal unless the record presents a clear case of an abuse of that discretion." (*Foster* v. *Foster*, 8 Cal.2d 719, 730 [68 P.2d 719] ; *Munson* v. *Munson*, 27 Cal.2d 659, 666 [166 P.2d 268] ; *Goto* v. *Goto*, 52 Cal.2d 118, 123 [338 P.2d 450] ; *Sanchez* v. *Sanchez*, 55 Cal.2d 118, 121 [10 Cal.Rptr. 261, 358 P.2d 533].) ▮ The appellate court's function is fully performed when it finds in the record substantial evidence which supports the essential findings of the trial court. (*Sanchez* v. *Sanchez*, *supra*, at p. 126 ; *Urquhart* v. *Urquhart*, 196 Cal.App.2d 297, 300 [16 Cal.Rptr. 469].) Accordingly, every presumption is in favor of the reasonableness of the order of modification. (*Gudelj* v. *Gudelj*, 41 Cal.2d 202, 209 [259 P.2d 656] ; *Gantner* v. *Gantner*, 39 Cal.2d 272, 275 [246 P.2d 923] ; *Sanchez* v. *Sanchez*, *supra*, at p. 121.)

In the early Supreme Court case of *Crater* v. *Crater* (1902) 135 Cal. 633, 634 [67 P. 1049], we find it stated that the correct rule in custodial proceedings is that: "The court, in revising and modifying its decree, proceeds upon new facts considered in connection with the facts formerly established, the change of circumstances, the conduct of the parties, and the best interests of the child." (Accord: *Prouty* v. *Prouty* (1940) 16 Cal.2d 190, 195 [105 P.2d 295] ; *Holsinger* v. *Holsinger* (1955) 44 Cal.2d 132, 135 [279 P.2d 961] ; *West* v. *West* (1960) 185 Cal.App.2d 700, 702 [8 Cal.Rptr. 559].) In *Foster*, the general rule warranting the modification of a custodial order is stated thusly: "[T]o justify a modification there must be a change of circumstances arising after the original decree is entered, or at least a showing that the facts were unknown to the party urging them at the time of the prior order, and could not with due diligence have been ascertained." (P. 727; accord: *Munson* v. *Munson, supra* (1946) at p. 666; *Gantner* v. *Gantner, supra* (1952) at p. 276; *Davis* v. *Davis* (1953) 41 Cal.2d 563, 565 [261 P.2d 729].) In *Gantner* and *Davis* it was declared that in the application of this rule the trial court must, in determining whether circumstances have changed, necessarily consider the facts established in the former proceedings as a basis for comparison. More recently, in *Goto* (1959) the Supreme Court reiterated the rule that "A showing of changed circumstances is required to support an order changing custody. [Citations.]" (P. 122.) *Goto*, however, recognized that the " 'changed circumstance' rule" is not absolutely ironclad, but subject to exception where the welfare of the child re-

quires it, even where there is no change of circumstances. (P. 123.) The latest statement by the Supreme Court is in *Sanchez* (1961) wherein the court states: "The rule is, of course, that 'In a divorce proceeding involving the custody of a minor, primary consideration must be given to the welfare of the child. ...' '' (P. 121.) *Sanchez* makes no reference to "the change of circumstances rule." In *Stack* v. *Stack* (1961) 189 Cal.App.2d 357, 370 [11 Cal.Rptr. 177], and *Urquhart* (1961) at page 301, in each of which *Sanchez* is cited, the reviewing court states that the change of circumstances rule "is no longer a rule, if it ever was one." *Stack* notes that this rule is "judge made" for the purpose of protecting "the court, the parties and the child from interminable and vexatious litigation." (P. 369.) *Urquhart*, although recognizing that the question of changed circumstances is an important consideration, states that it "is but evidence that the court may consider in the exercise of its discretion. ..." (P. 301.) Both *Stack* and *Urquhart*, after noting that modifications have been made and sustained on appeal with and without a showing of changed circumstances, observe, with philosophical resignation, that "The only rule consistently applied is that the court may modify or vacate its order at any time." (Pp. 370 and 301-302, respectively.)

Notwithstanding the ominous observation made by this court in *Stack* that the appellate courts "have almost completely abdicated in this field in favor of the trial courts" and that because of the wide discretion given trial courts "reversals will be rare indeed" (pp. 372-373), we have made an attempt to reconcile the authorities and to distill from them the guidelines to be followed in cases of this type. ▮ Accordingly, we are satisfied that, while the paramount consideration in the modification of custodial cases is the welfare of the minor, the factor of changed circumstances is of considerable importance and should be considered in each case. Indeed, a review of the authorities discloses that in most of the cases considered on the appellate level the question of changed circumstances was before the court to a lesser or greater degree.

In *Foster*, the Supreme Court noted that "[i]t is perhaps possible to conceive of a case in which, despite the fact that there was apparently no change of circumstances, nevertheless, the welfare of the child might require that the previous order of custody be changed." (P. 728; reiterated in: *Goto* v. *Goto, supra,* at p. 123.) It is apparent, therefore, that our Supreme Court contemplates that the power to change custody

without a showing of changed circumstances should be exercised with reluctance and only where imperative reasons require it. To hold otherwise would lay a foundation for interminable and vexatious litigation, as the dissatisfied party could keep the courts continually occupied with suits seeking to change the former order of the court in the hope that some other court might deem such change to be for the child's welfare, even though the circumstances were no different than at the time of the making of the previous order. This danger was recognized in *Connolly* v. *Connolly* (1963) 214 Cal.App.2d 433 [29 Cal.Rptr. 616], wherein it was said that "repeated applications for change of custody without subsequent change of conditions should not be encouraged and may be a ground for denying change. ..." (P. 437.) We conclude, therefore, that, except in the rare occasions where the welfare of the child requires it, there should be a showing of changed circumstances to support an order changing custody, and that in each instance the court should be guided by the considerations specified in section 138 of the Civil Code relative to making, modifying and vacating custodial orders, to wit: "(1) By what appears to be for the best interests of the child and if the child is of a sufficient age to form an intelligent preference, the court may consider that preference in determining the question; (2) As between parents adversely claiming the custody, neither parent is entitled to it as of right; but other things being equal, if the child is of tender years, custody should be given to the mother; if the child is of an age to require education and preparation for labor or business, then custody should be given to the father." (See *Goto* v. *Goto, supra,* at pp. 122-123.)

 Turning to the case at bench, in the light of the foregoing applicable principles, we find that the trial court's determination was predicated upon defendant's testimony and the report of the probation officer. Accordingly, we must view the evidential character of such testimony and report in order to determine whether there is substantial evidence in the record which supports the essential findings of the trial court. The sum and substance of defendant's testimony is that plaintiff did not pay child support for the child in her custody, and that he left his last known place of residence without notifying her of his or the children's whereabouts. Not only is there an absence of a showing of changed circumstances, but neither of these occurrences, in and of themselves, shows that the welfare or interests of Sharon and

Robert are endangered. ■ The fact that a husband neglects to pay the required support for the child in his former wife's custody in no way demonstrates that he is neglecting the best interests of the children lawfully in his custody. (See *West* v. *West, supra,* 185 Cal.App.2d 700, 702.) ■ The same may be said of the removal of the children's place of residence. In the instant case no restraint was imposed upon plaintiff in the order granting him custody with respect to changing the children's residence. ■ Section 213 of the Civil Code provides that "A parent entitled to the custody of a child has a right to change his residence, subject to the power of the proper court to restrain a removal which would prejudice the rights or welfare of the child." Accordingly, in the absence of a showing that the removal of the child's place of residence is inconsistent with the child's welfare, such removal per se does not warrant a change of custody. (See *In re Bauman,* 82 Cal.App.2d 359, 364 [186 P.2d 154]; *In re Dehning,* 135 Cal.App.2d 635, 637 [287 P.2d 782]; *Stack* v. *Stack, supra,* 189 Cal.App.2d 357, 366; and see *Dozier* v. *Dozier,* 167 Cal.App.2d 714, 719 [334 P.2d 957].)

■ As hereinbefore noted, the insufficiency of this testimony was recognized by the trial judge and prompted the suggestion that the matter be referred to the probation department for a report. We must, therefore, consider whether such report supplied the substantiality necessary to defendant's showing.

■ The statutory authority for reports of probation officers in matters involving the custody of minors is, as contended by defendant, found in Welfare and Institutions Code section 582.[11] (See 27 Ops. Cal.Atty.Gen. 292.) Plaintiff's contention that section 263 (of the Code of Civil Procedure) is the applicable authority is without merit. Section 263 applies to "domestic relations cases investigators" and to counties which are authorized by law to have such investigators. (See § 263; and see Gov. Code, §§ 69900 (San Francisco County) and 69894.1 (Los Angeles County).) Alameda County is not so authorized. (See § 69903.) ■ Suffice it to say, however, both the reports of probation officers and

---

[11]§ 582 provides: "The probation officer shall upon order of *any court in any matter* involving the custody, status, or welfare of a minor or minors, make an investigation of appropriate facts and circumstances and prepare and file with the court written reports and written recommendations in reference to such matters. The court is authorized to receive and consider the reports and recommendations of the probation officer in determining any such matter." (Italics added.)

those of domestic relations investigators may be considered as evidence by the court, and then may constitute competent evidence as to matters contained therein. (Code Civ. Proc., § 263; Welf. & Inst. Code, § 582; *Fewel* v. *Fewel*, 23 Cal.2d 431, 433-436 [144 P.2d 592] ; *Sanchez* v. *Sanchez, supra,* 55 Cal.2d 118, 125.) ▮ Such reports should be presented in affidavit form or otherwise under oath, and, upon timely demand, the reporting ·officer or investigator should be required to testify as any other witness, subject to the right of cross-examination. (*Fewel* v. *Fewel, supra,* at p. 436; *Wilkinson* v. *Wilkinson,* 105 Cal.App.2d 392, 399-400 [233 P.2d 639].) It is convenient to note here that in *Sanchez* the reviewing court approved the use of the county probation officer's report as evidence by the Alameda County Superior Court. Although the opinion does not disclose whether such report was verified, *Sanchez* is distinguishable on the basis that it was received in evidence pursuant to a reference to such officer upon the *stipulation* of the parties.

▮ The report in the instant case was unverified; the reporting officer did not testify under oath; and the report was not received in evidence pursuant to stipulation. Accordingly, under the rule declared in *Fewel* such report was incompetent and inadmissible, and therefore was subject to a proper objection. In the present case, however, no objection was interposed. Plaintiff cannot be heard to complain that he was not present to object. Defendant was entitled to proceed with the hearing in his absence when he failed to appear because, as we have hereinbefore pointed out, the court had jurisdiction over both the subject matter and plaintiff's person. (§ 594; *Clune* v. *Quitzow,* 125 Cal. 213, 214 [57 P. 886] ; *McGuire* v. *Drew,* 83 Cal. 225, 230 [23 P. 312].) ▮ We are thus confronted with the well-established principle "that material and relevant evidence which is technically incompetent and inadmissible under the exclusionary rules, if offered and received without a proper objection or motion to strike, may be considered in support of the judgment." (Witkin, Cal. Evidence, § 723, p. 751, and cases cited : see McCormick, Evidence, § 54, p. 126; and see *Estate of Fraysher,* 47 Cal.2d 131, 135 [301 P.2d 848] ; *Stickel* v. *San Diego Elec. Ry. Co.,* 32 Cal.2d 157, 161 [195 P.2d 416].) Objection may not be raised for the first time on the appellate level. (*Estate of Fraysher, supra,* at p. 135; *Soares* v. *Ghisletta,* 1 Cal.App.2d 402, 404-405 [36 P.2d 668].) ▮ Such incompetent and inadmissible evidence received

without objection, "takes on the attributes of competent proof when considered upon the question of sufficiency of the evidence to support a finding." (*Berry* v. *Chrome Crankshaft Co.*, 159 Cal.App.2d 549, 552 [324 P.2d 70].) ▆▆▆ While incompetent evidence, and sometimes immaterial evidence, received without objection, may support a judgment, irrelevant evidence, i.e., evidence which has no tendency to prove a material issue, will not support a judgment even if it comes in without objection. (*Witkin, supra,* § 724, pp. 752, 753; see *McCormick, supra,* p. 127.) ▆▆▆ The foregoing rule does not, however, estop plaintiff in the instant case from challenging the sufficiency of the evidence to support the trial court's order. Accordingly, we now direct our attention to the report in question.

▆▆▆ The subject report states that the exact whereabouts of plaintiff, Sharon and Robert is unknown, and that plaintiff's mailing address is P.O. Box 725, Burlington, Vermont. It then relates statements made by defendant essentially as follows: that she had received no child support from plaintiff; that plaintiff has "not complied with the visitation schedule agreed upon in Court" with respect to Sharon and Robert; that Sharon and Robert usually came for visits in capris and shorts; that her last visit with said minors was on November 10, 1961, as plaintiff moved thereafter, leaving no forwarding address; that the children should not remain with their father "in view of his irresponsibility toward his creditors, his conning people out of their money, and then skipping out"; his failure to emphasize the value of education; that plaintiff's home is filthy and Sharon and the other older children are required to do all of the work, take care of the younger children, and prepare the meals;[12] that plaintiff moves about frequently and does not meet his debts; that she and Sharon "have some problems to work out and that it will not be easy"; and that "[s]he does not anticipate any difficulty in Robert's adjustment to living with her."

The report then contains reference to school reports showing that Sharon and Robert had "average" grades; that they attended a junior high school in Palo Alto until November 17, 1961, when the family reportedly moved to Alaska; and that on December 28, 1961, this school received a request for a transcript of records from a high school in South Burlington, Vermont. The report also states that two of

---

[12]It appears from the report that plaintiff has remarried and that there are other children in his family besides Sharon and Robert.

plaintiff's creditors have contacted the probation department in their attempts to locate plaintiff in order to collect delinquent accounts. Included in the report is information received from Antone Montana, plaintiff's former landlord, that plaintiff was indebted to him for rent and certain personal property amounting to $1,300; that plaintiff moved out during the night without his knowledge; that the house was left in a "very bad condition"; and that the older Forslund children kept themselves clean, but the younger children were " 'filthy.' " A Mrs. Bacon is alleged in said report to have stated that plaintiff, who was employed by her husband, obtained some appliances in her husband's name without the latter's knowledge, sold the same and pocketed the money; that she furnished plaintiff's home including carpeting costing $300 to $400, which amount plaintiff promised to pay but never did; that when plaintiff moved he took most of the furniture with him, leaving only that in poor condition; that she went to the house after plaintiff and his family had vacated it, and that it was "filthy"; that during the last few months plaintiff and his family lived in Palo Alto she fed them; that plaintiff and his present wife "should have been more concerned as to whether the children had any food to eat, rather than letting them find their own"; that she had been to the home a number of times and had never seen plaintiff correct his children; that the housework, child care and cooking were left up to the older children; "that some of the younger children hardly ever wore any clothing and one of the children never seemed to wear any panties"; that the plumbing in the house was poor; and that "[h]er husband told her that the family had been using the bathtub when the toilet became plugged." Mrs. Bacon is reported to have stated, however, "that the children were not behavior problems and were very likeable youngsters." The report also shows that defendant's employer states that defendant, although easily excitable, is a good worker and that she is interested in and anxious to have all three of her children together.

The balance of the report contains the officer's evaluation, summarizing the foregoing statements, and concludes with the following statement: "Inasmuch as the plaintiff's address was just recently obtained, there has been insufficient time to notify him of this hearing or to ascertain his present home situation. Due to this, we are unable to make a recommendation as to the custody of Sharon and Robert Forslund."

It is apparent that the subject report is replete with hearsay and conclusions. However, under the rule hereinabove alluded to, such incompetent evidence, because received without objection, took on the attributes of competent proof. "Evidence technically incompetent admitted without objection must be given as much weight in the reviewing court in reviewing the sufficiency of the evidence as if it were competent. ..." (*Yule* v. *Miller*, 80 Cal.App. 609, 616 [252 P. 733]; *Berry* v. *Chrome Crankshaft Co., supra,* 159 Cal. App.2d 549, 552.) Accordingly, the supplemental probation report was competent evidence of the matters contained therein. Plaintiff contends, however, that even if such evidence is competent, the trial court could not determine whether there has been a change of circumstances warranting a change in custody solely on the basis of such report. Plaintiff asserts that in order to make such a determination the court should have had before it evidence of the circumstances and conditions as they were at the time of the original custody order. He suggests that, at the least, the trial court should have read and considered the report of September 5, 1961, which was admitted in evidence at the time of the original custody hearing. It appears from the record, however, that at the first modification hearing on May 29 the trial court read "a report." This report, obviously, is the September 5, 1961, report, as the reference for the preparation of the supplemental report had not yet been made. Neither of the parties, moreover, contends that there were any reports other than the two in question. The September 5, 1961, report is before us pursuant to plaintiff's motion to augment.[13]

We must assume, under the circumstances, that the trial court read and considered the September 5, 1961, report which was a part of the divorce proceedings. Accordingly, we must consider this report in conjunction with our review of the trial court's consideration of the element of changed circumstances and its exercise of discretion with respect thereto. This report contains a history of the family background of plaintiff and defendant; statements by Sharon, who was born on July 2, 1947, and Robert, who was born on August 26, 1948; a statement by Lawrence, the youngest child; statements by plaintiff and defendant concerning their family life, their relationships, their personal behavior, and their

---

[13]This report, comprising some 33 pages, was received in evidence at the hearing on September 7, 1961, with the consent of both parties as it is designated as plaintiff's exhibit 1 and defendant's exhibit B.

attitudes toward, and plans for, the children; and statements from relatives, friends, acquaintances and agency contacts relative to the behavior and relationships of plaintiff and defendant toward each other and the children, and concerning the nature and condition of their respective homes. The probative facts in the report are such that proper inferences could be drawn therefrom that plaintiff and his present wife maintained an adequate and suitable home for Sharon and Robert,[14] and that plaintiff was a fit custodian. We need not detail the evidentiary facts concerning defendant's personal behavior and characteristics or the conditions of her own home. Suffice it to say, the trial court found them sufficient to warrant the determination that Sharon and Robert's welfare would be better served under plaintiff's custody and control. Of significance, is the reported circumstance that during the seven years preceding the making of such report Sharon and Robert had lived most of the time with plaintiff, having lived only one year in defendant's home.[15] The report further shows that both Sharon and Robert expressed a preference to live with their father. With respect to plaintiff's permanency of residence, the report shows that the nature of his employment required a change of residence from time to time, and that on two occasions his employment took him to Alaska.[16]

While much must be left to the discretion of the trial court in determining whether the welfare of a child justifies the modification of a custody decree, there must be substantial evidence in the record to support the essential findings upon which such determination is predicated. The meaning of substantial evidence is well stated in *Estate of Teed*, 112 Cal.App.2d 638 [247 P.2d 54], as follows: ''[I]t clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with 'any' evidence. It must be reasonable in nature, credible, and of solid value; it must actually be *'substantial' proof of the essentials which the law requires in a particular case.*'' (P. 644; italics added; accord:

---

[14]Plaintiff and his present wife lived in said home with eight children: four by their union; the wife's daughter by a previous marriage, and the three children of plaintiff and defendant.

[15]Approximately two years were spent in a foster home.

[16]This report recommended that the custody of all three children be awarded to plaintiff.

500

*Dyer* v. *Knue*, 186 Cal.App.2d 348, 351 [8 Cal.Rptr. 753];
*Estate of Bishop*, 209 Cal.App.2d 48, 53 [25 Cal.Rptr. 763].)

In the instant case the court grounded its order
upon the basis that plaintiff is subjecting the children "to a
rather irregular and poorly controlled living condition."
The record does not disclose, however, whether the order is
predicated upon a change of circumstances. An examination
of the record on the whole fails to disclose that there is
substantial evidence to support a finding on the essentials
which this type of controversy requires. Not only is there a
lack of evidence upon the paramount issue of the welfare and
best interests of the children in question, but the record is
wholly devoid of any evidence on the important consideration
of whether the circumstances or conditions have changed so
as to justify defendant's request for a modification of the
custody order. There is nothing in the record to show what
the children's living conditions were at the time of the hear-
ing, the suitability of the home and the environment in which
they were then living, or of personal behavior or character-
istics of plaintiff insofar as they relate to the welfare of the
children. The report of the probation officer concedes that,
although he had ascertained the residence address of plaintiff
in Vermont, he had not had the opportunity to ascertain the
present "home situation." It might well be that at that time
the children were living under the most desirable of living
conditions meeting the optimum requirements of their emo-
tional and physical needs. It is noteworthy that while de-
fendant was available to the probation officer's investigation,
the report is silent as to the condition and nature of her
present home, nor is there any reference therein to defend-
ant's then personal behavior and characteristics. These cir-
cumstances were important considerations at the time of the
making of the original custody order.

In sum, there is no showing of changed circumstances.
While there has been a "change" in the sense that the chil-
dren have been removed, presumably from this state to an-
other, this move per se is not, as we have hereinabove pointed
out, a "change of circumstance." (See *In re Bauman, supra,*
82 Cal.App.2d 359, 364.) Any suggestion that such a move is
an aimless and nomadic peregrination is without foundation.
At best, the record shows a change of residence from Cali-
fornia to Vermont against which no restraint had been im-
posed. We do not approve or condone plaintiff's move with-
out advising defendant of his and the children's where-
abouts. Defendant, as the mother of the children, is entitled

to know where they are residing. It may well be that the move was made with the motive of frustrating defendant's visitation rights. Such a deprivation, if it affects the welfare of the children, can be the basis for the transfer of custody. (See *Stack* v. *Stack, supra,* 189 Cal.App.2d 357, 370; and *Shea* v. *Shea,* 100 Cal.App.2d 60, 63 [223 P.2d 32].) However, in the instant case there is an absence of a showing that such removal is inconsistent with the welfare of the children.

The burden of proving that the welfare of the child requires a change of custody, or that the circumstances and conditions have so changed as to justify such change, is upon the party requesting the modification. (*Prouty* v. *Prouty, supra,* 16 Cal.2d 190, 193; *Johnson* v. *Johnson,* 72 Cal.App.2d 721, 724 [165 P.2d 552].) It should be here noted, moreover, that in the September 5, 1961, report there was evidence submitted by defendant for the court's consideration at the original custody hearing that plaintiff could not "offer a stable environment for the children" and that he has "moved frequently disrupting the children's schooling. . . ."

Similarly, with regard to plaintiff's failure to pay child support for Lawrence, and his difficulties with his creditors, it cannot be said, in the absence of a showing that such conduct affects the children's welfare, that such conduct is a basis for a change of custody. Plaintiff's poor credit record and his failure to pay his bills regularly were matters contained in the first probation report and, as such, were evidentiary factors considered by the trial court at the time it made its original custody order.

We are thus left with the hearsay and conclusionary evidence, admissible under the circumstances of this case, concerning the "filthy condition of plaintiff's home," the doing of housework and cooking by the children, and Mrs. Bacon's statement that she fed the children. Certainly the fact that children may perform housework and domestic duties does not indicate a condition detrimental to their welfare. It is significant to note that the circumstance of strict discipline on the part of plaintiff as contrasted with defendant's laxity in this respect was also before the trial court when it made its first custody order. The fact that Mrs. Bacon fed the children, and her gratuitous statement that plaintiff and his present wife "should have been more concerned as to whether the children had any food to eat, rather than letting them find their own," does not warrant the inference that the children were not fed by plaintiff or that they were neg-

lected. With respect to the ''filthy condition'' of the home, we have such an appraisal on the part of the defendant without detail or elaboration and without regard to the time and frequency of such observation. This same charge was made by defendant in the first probation report wherein the probation officer noted that while the physical condition of plaintiff's home ''was not particularly neat'' it was ''not dirty or unsanitary.'' The landlord's reference was to the condition in which the house was left when it was vacated and not to the living conditions while occupied. His remark that the younger children were ''filthy'' has no reference to Sharon and Robert who he acknowledged ''kept themselves clean. ...'' The reference by Mrs. Bacon to her husband's statement as to the use of the bathtub is not only double hearsay, but it does not indicate how long and to what extent this purported condition existed or whether Sharon and Robert made such use of the facilities or whether they were in any way affected by such condition. While these circumstances constituted some evidence on the question before the court, they do not add up to the essential evidence of ponderable legal significance warranting a change of custody. Moreover, as noted by Justice Duniway in *Stack*, there can be an abuse of discretion even though there is *some* evidence to support the court's decision. In the case at bench we do not have the essential probative facts showing a change of circumstances; much less do we have a showing of imperative reasons which would require a change of custody without changed circumstances. Accordingly, we are constrained to hold that there was an abuse of discretion.

In view of the conclusion herein reached, we need not discuss plaintiff's assertion of error on the part of the trial court in refusing to consider the affidavits of Sharon and Robert submitted in connection with plaintiff's motion for a stay of execution. Suffice it to say, these affidavits were not before the court when it made the order under attack and therefore would not be proper subjects of review on this appeal.

The order is reversed.

Bray, P. J., and Sullivan, J., concurred.