[Civ. No. 16788. Fourth Dist., Div. One. Apr. 19, 1979.]

DORIS ALTHEA WEST, Plaintiff and Appellant, v.
JOHN BURNARD WEST, Defendant and Respondent.

---

**COUNSEL**

Nordman, Cormany, Hair & Compton and Larry L. Hines for Plaintiff and Appellant.

Haskins, Nugent, Newnham & Kane and L. Hunter Tracht for Defendant and Respondent.

---

**OPINION**

**BROWN (Gerald), P. J.**—Doris Althea West appeals the judgment after a court trial established her British divorce decree as a California judgment and then terminated spousal support and reduced child support to $250 per month.

Doris and John Burnard West were divorced September 6, 1967, after a marriage lasting about four years; they had been separated about two years. There was one child who remained with the mother. Support orders were made and modified several times without complaint. John moved to California and discharged his English solicitors in order to represent himself in propria persona. Doris sought modification of the support decree; John received notice Doris was asking for more money; but he claims he never got notice of the date of the hearing. At the hearing spousal support was raised from 2,000 to 4,000 pounds per year and child support from 500 to 2,000 pounds per year. John has continued to pay support at the lower levels claiming the English courts had no jurisdiction to change the support allowances; Doris argues the increases were properly granted and John is greatly in arrears.

Service of process in British divorce cases is governed by Matrimonial Causes Rules 1973. Rule 117, Service out of England and Wales, states in pertinent part:

"(1) Any document in matrimonial proceedings may be served out of England and Wales without leave either in the manner prescribed by

these Rules or—(a) where the proceedings are pending in the High Court, in accordance with R.S.C. Order 11, rules 5 and 6 (which relate to the service of a writ abroad);" This rule permits alternative means of service, either under other Matrimonial Causes Rules 1973 such as rules 118 and 14 *infra* or if the proceedings are pending in the high court, as they are here, under Supreme Court Practice 1976, Rules of the Supreme Court, Order 11, rule 5. In the present proceeding for ancillary relief it does not matter which procedure is followed.

Under the Matrimonial Causes Rules 118: "Where a document is required by these rules to be sent to any person, it shall, unless otherwise directed, be sent by post—(a) . . . (b) if he is acting in person, to the address for service given by him. . . ." There is no requirement that notice be sent by certified mail or with a return receipt requested. However, notice must be filed and served in the prescribed way. For service by mail the Registrar must endorse the copy of the notice with the date of the proceedings, the date of posting and the address used. (13 Halsbury's Laws of England (4th ed. 1975) Divorce, §§ 522, 1169, 1068, 743, 742; Matrimonial Causes Rules 1973, SI 2016, r. 68(3), 70, 121 (1)(2), 118(b).)

In addition, rule 14 of the Matrimonial Causes Rules 1973 requires that the respondent acknowledge receipt of service or the court assure itself in some other manner that service, in fact, was made. The rule in pertinent part states:

"14. (1) Subject to the provisions of this rule and . . . 117, a copy of every petition shall be served personally or by post on every respondent . . .

". . . . . . . . . . . . . . . . . . . . .

"(5) For the purposes of the foregoing paragraphs, a copy of a petition shall be deemed to be duly served if—

"(a) an acknowledgment of service in Form 6 is signed by the party to be served or by a solicitor on his behalf and is returned to the court office, and

"(b) where the form purports to be signed by the respondent, his signature is proved at the hearing.

"(6) Where a copy of a petition has been sent to a party and no acknowledgment of service has been returned to the court office, the

registrar, if satisfied by affidavit or otherwise that the party has nevertheless *received* the document, may direct that the document shall be deemed to have been duly served on him." (Italics added.) The form giving notice of the hearing states "the Registrar will require to be satisfied that the respondent . . . has been served." These requirements are designed to assure the court that in the ordinary course of events, the notice would have been actually received. The procedure comports with or exceeds our due process requirements. (See *Julen* v. *Larson,* 25 Cal.App.3d 325, 328 [101 Cal.Rptr. 796].)

The alternative mode of service can be effected under Rules of the Supreme Court, Order 11, rule 5 which in part provides: "5 (2) Nothing in this rule or in any order or direction of the court made by virtue of it shall authorize or require the doing of anything in a country in which service is to be effected which is contrary to the law of that country. (3) A writ, or notice of a writ, which is to be served out of the jurisdiction (a) need not be served personally on the person required to be served so long as it is served on him in accordance with the law of the country in which service is effected." ■ Looking then to California law it is necessary to serve notice on the party himself in order to modify a judgment or order after the final decree of dissolution has been entered (Civ. Code, § 4809). Such notice may be by mail under Code of Civil Procedure section 1013 which does not require the mail be certified or sent with return receipt requested. However, it does require proof of service including an affidavit detailing how and when service was attempted (Code Civ. Proc., § 1013a). The courts require strict compliance with these sections and failure to comply deprives the court of jurisdiction (*Forslund* v. *Forslund,* 225 Cal.App.2d 476, 485 [37 Cal.Rptr. 489]).

■ Here the only question is whether the procedural requirements with regard to service were met. The fact he may not have received notice is of no legal import as long as the procedures implementing the constitutional requirements of due process were followed giving assurance that service really had been made. (Rest., Judgments, § 6, com. (c); see *McKeon* v. *Sambrano,* 200 Cal. 739, 741 [255 P. 178]; cf. Matrimonial Causes Rules, rule 59(3)). Here there is no allegation service was acknowledged or the Registrar made inquiry as required by British law, nor is there evidence notice was accompanied by an affidavit as required by California law. Doris attempts to remedy this deficiency by two letters from the Registrar's office saying notice of the hearing was sent

to John. The first[1] is clearly insufficient since it does not refer to the date on which the hearing was to be held. The second letter dated September 28, 1976, reads:

"WHEREAS Mr. Registrar Newton a Registrar of this Division appointed the 17th day of October 1975 for the hearing of an application by the Petitioner for ancillary relief

"IT IS HEREBY CERTIFIED on perusal of the Court file that Notice of such hearing was sent to the Respondent at his address:—9626 Blackgold Road, La Jolla, California 92037, U.S.A. by air mail by the proper officer of this Court on the 22nd September 1975." This certification satisfies neither alternative. The Registrar did not make inquiry to satisfy himself that respondent received the document (cf. *Spendley* v. *Spendley and Goard* [1920] P. 40; *Gilbert* v. *Gilbert and Brooks* [1948] P. 314, 321; *Heath* v. *Heath* [1950] 1 All E.R. 877, 878). Nor is this after the fact certification in accordance with the law of California. Where service is made by mail strict compliance with Code of Civil Procedure section 1013a is required (*Forslund* v. *Forslund, supra,* 225 Cal.App.2d 476, 485-486). That section requires that if the affidavit is not completely and correctly filled out, service is defective and the resulting default judgment must be dismissed because the court lacked jurisdiction (*Hogs Back Co.* v. *New Basil Co.,* 63 Cal. 121, 122; see *Cunningham* v. *Warnekey,* 61 Cal. 507, 508). Since the case must be dismissed if the affidavit is improper, the conclusion is inescapable that the case must be dismissed if there is no affidavit at all. Under California law service was fatally deficient.

The last valid order is the one dated December 29, 1970, which directs John to pay 2,000 pounds per year spousal support and 500 pounds per year in child support. ■ This order may be enforced in the courts of California and modified by them as well as long as the decree can be modified in the court where the decree was originally rendered. (See *Biewend* v. *Biewend,* 17 Cal.2d 108, 114 [109 P.2d 701, 132 A.L.R. 1264]; *Avery* v. *Avery,* 10 Cal.App.3d 525, 532 [89 Cal.Rptr. 195].) Here in Doris' English maintenance decree, spousal support is "for their joint lives"

---

[1]The text of the letter is as follows:
"Dear Sirs
"WEST v. WEST No. 9055 of 1966
"Your letter dated 12 May 1976 is hereby acknowledged.
"On perusal of the Court file I can confirm that notice of the hearing of the application for Ancillary relief was sent to Mr John Burnard West, the respondent in this matter, at 9626 Blackgold Road, La Jolla, California 92037, U.S.A. on the 22nd September 1975.
"Yours faithfully"

subject to modification. Such a decree may be terminated or discharged by the court (Matrimonial Causes Act 1973, §§ 28(1), 31(a)). Thus the court here can legitimately terminate Doris' support award under English or California law. The factors to be considered in making an award of support are similar under British and California law,[2] the major difference being the attempt under British law to place the parties in the financial position each would have been in had the marriage not broken down. However, in either jurisdiction the court should take all the criteria into account in determining support. (See *In re Marriage of Morrison,* 20 Cal.3d 437, 454-455 [143 Cal.Rptr. 139, 573 P.2d 41]; 13 Halsbury's Laws of England (4th ed. 1975) Divorce, § 1060.) ■ Under California law it is not an abuse of discretion to terminate spousal support after 15 years when the marriage lasted only four years and the wife is able to work. (See *In re Marriage of Andreen,* 76 Cal.App.3d 667, 672 [143 Cal.Rptr. 94].) Under British law the husband will not be required to make any financial provision or will be ordered to pay only nominal support where the marriage is short or the wife is able to work and there are no children.

---

[2]Under California law "the court shall consider . . .:

"(1) The earning capacity and needs of each spouse.

"(2) The obligation and assets, including the separate property, of each.

"(3) The duration of the marriage.

"(4) The ability of the supported spouse to engage in gainful employment without interfering with the interests of dependent children in the custody of the spouse.

"(5) The time required for the supported spouse to acquire appropriate education, training, and employment.

"(6) The age and health of the parties.

"(7) The standard of living of the parties.

"(8) Any other factors which it deems just and equitable.

"  .    .    .    .    .    .    .    .    .    .    .    .    .    .    ."

(Civ. Code, § 4801.)

Under English law the court looks at:

"  .    .    .    .    .    .    .    .    .    .    .    .    .    .

"(a) The income, earning capacity, property and other financial resources which each of the parties to the marriage has or is likely to have in the foreseeable future;

"(b) The financial needs, obligations and responsibilities which each of the parties to the marriage has or is likely to have in the foreseeable future;

"(c) The standard of living enjoyed by the family before the breakdown of the marriage;

"(d) The age of each party to the marriage and the duration of the marriage;

"(e) Any physical or mental disability of either of the parties to the marriage;

"(f) The contributions made by each of the parties to the welfare of the family; including any contribution made by looking after the home or caring for the family;

"(g) In the case of proceedings for divorce or nullity of marriage, the value to either of the parties of the marriage of any benefit (for example, a pension) which, by reason of the dissolution or annulment of the marriage, that party will lose the chance of acquiring; and so to exercise those powers as to place the parties, so far as it is practicable and, having regard to their conduct, just to do so, in the financial position in which they would have been if the marriage had not broken down and each had properly discharged his or her financial obligations and responsibilities towards the other." (Matrimonial Causes Act 1975, § 25.)

(See *Krystman* v. *Krystman* [1973] 3 All E.R. 247; *Wachtel* v. *Wachtel* [1973] 1 All E.R. 829, 840; *Taylor* v. *Taylor* [1974] 119 Sol Jo 30; *Graves* v. *Graves* [1973] 117 Sol Jo 679; 13 Halsbury's Laws of England (4th ed. 1975) Divorce, § 1060.) Here John has provided support for his former wife for fifteen years following a four-year marriage during which they cohabited for two years. Neither made any extraordinary contribution to the capital assets of the community during the marriage. (Cf. *O'Donnell* v. *O'Donnell* [1975] 2 All E.R. 993.) The child of this union is approaching the age of 16 and no longer needs constant care and attention, thus freeing Doris for more employment opportunities. It was not an abuse of discretion for the trial court to order termination of spousal support on the payment of $5,000. Such a proposal meets "the justice of the case" (*Wachtel* v. *Wachtel, supra,* 1 All E.R. 829, 842).

The judgment is affirmed.

Cologne, J., and Welsh, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 19, 1979.

---

*Assigned by the Chairperson of the Judicial Council.